**In re Joseph Oscar MASSIMINI and Anita Louise Massimini, Debtors.**

**Mary MASSIMINI, Plaintiff,**

**v.**

**Joseph MASSIMINI, Defendant.**

**Bankruptcy No. 80–595.**
**Adv. No. 80–572.**

United States Bankruptcy Court,
W. D. Pennsylvania.

Jan. 8, 1981.

Edward A. Olds, and Eileen Yacknin, Pittsburgh, Pa., for plaintiff.

Robert J. Trageser, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

Plaintiff Mary Massimini and Defendant Joseph Massimini were married on February 14, 1967 and were divorced on May 1, 1976. Mary and Joseph Massimini are the parents of three minor children. In connection with the divorce, the parties entered into an Agreement to provide for support and maintenance for Mary Massimini and the children and to dispose of marital property and debts. The Agreement (Plaintiff's Exhibit A) provides that the property at 26 Zimmerman Street shall be transferred to Mary Massimini (and that she is to pay the mortgage and all future expenses incident to ownership); that Mary Massimini shall be solely responsible for the debt to Sears Company; that Joseph Massimini shall be solely responsible for other debts incurred during the marriage including but not limit-

ed to the debt to Gramatan Incorporated (home improvement), Mellon Bank, certain medical and dental bills, and the Credit Bureau; that each party will receive ½ of the income tax refund and that Joseph Massimini is obliged to pay support for his wife and children in the sum of $40.00 a month.

On April 24, 1980 Joseph Massimini and his present wife, Anita Louise Massimini, filed a petition in bankruptcy. On July 10, 1980 Plaintiff filed a Complaint seeking to exclude certain debts from discharge. An Answer was filed on September 15, 1980, and a hearing on this matter was held on September 17, 1980.

The Plaintiff complains that the Defendant listed in his Schedules certain debts which should not be discharged pursuant to 11 U.S.C. § 523 because they are in the nature of support payments. The debts in question are listed as payable to the Gramatan Chemical Bank, to Victor P. Cafaro, M. D., and to Mary A. Massimini.

At trial, Mrs. Ruth Still, a domestic relations counselor and Plaintiff's expert witness, testified concerning the factors used to determine the amount of support in divorce situations. She reviewed the Agreement and concluded that $40.00 per month was low, given the fact that Joseph Massimini received $600.00–$700.00 per month as income at the time at which the Agreement was entered into. Plaintiff testified that she considered her husband's agreement to pay the bills as support for herself and the children because she was neither employed then nor presently and was unable to make these payments. Further, the $40.00 per month was much too low, unless other support was forthcoming. Plaintiff also testified that higher cash support payments would have reduced her payment from the Department of Public Welfare whereas Defendant's obligation to pay their joint debts would not reduce these payments. Defendant testified that he was unemployed and that he had one child by his present marriage.

Robert J. Trageser, Esq., counsel for the Defendant in the divorce proceeding and now for the debtors, took the stand and testified that the Agreement (Plaintiff's Exhibit A) was a combination property settlement and support agreement, that only $40.00 was the amount for support, and further that the Agreement was drafted by the Plaintiff, not the Defendant.

The issue presented by this case is whether the debts in question are in the nature of support and therefore nondischargeable or whether they should be construed as a property settlement and dischargeable as such.

■ 11 U.S.C. § 523 enumerates the types of debts which are not dischargeable in bankruptcy court and in subsection (a)(5) provides that a debt for support is nondischargeable. A debt is nondischargeable under this section if the payment of the debt is reasonably necessary for the support and maintenance of the former spouse and children at the time the debt was imposed in the divorce decree and at the time the discharge of the debt is attempted. This policy requires a balancing between the Bankruptcy Code, which gives the debtor a fresh start unencumbered by the burdens of preexisting debts, and the duty to support children before and after bankruptcy.

It is important to note that a debt incurred for child support may have an independent basis in contract even though it may also represent an obligation which the law imposes by statute. Statutory obligations for support can be enforced through contempt proceedings and can result in criminal actions. In recognition of this policy 11 U.S.C. § 362(b)(2) also provides that the automatic stay is not applicable to the collection of support from property that is not property of the estate.

■ An agreement and/or order in a divorce decree to pay community debts may be either: (1) in the nature of alimony or support and not dischargeable in bankruptcy; or (2) in the nature of a property settlement which is dischargeable. Agreements that hold one's spouse harmless on joint debts, such as the ones in question here, can fall in either category. A comment in House Report on 11 U.S.C. § 523(a)(5) states:

This provision will, however, make non-dischargeable any debts resulting from an agreement by the debtor's spouse harmless on joint debts, to the extent that the agreement is in payment of alimony, maintenance or support of the spouse... H.R.Rep.No.95–595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6319.

In implementing this policy, § 523(a)(5) sets up a twofold test for the dischargeability of alimony, maintenance and support. The first test is that the support must be payable to a spouse, former spouse and/or child. The second test is that the payments must be actually in the nature of alimony, maintenance or support and not in the nature of a property settlement. 3 *Collier on Bankruptcy* § 523.15[1] (15th Ed., 1979). The intent of § 523(a)(5) is to insure that the debtor's dependents will not be left destitute and that the debtor will not be relieved of his legal obligation to support his children by the provisions of the Code which grant debtor a fresh start.

■ Thus, in examining whether a settlement is in the nature of a property settlement or of a support obligation, the Court may look behind the mere recitations of the settlement agreement and look to the substance of the situation. The Bankruptcy Court need not accept as determinative statements in the decree which label obligations as a property settlement, but is rather permitted to look at the total decree and the underlying obligations to see if they were in fact imposed for the support of the spouse and children. Both parties are permitted to present extrinsic evidence as to the underlying nature of the debt.

Therefore, the Bankruptcy Court must first determine whether a duty of support exists between the parties under applicable state law and apply federal law to characterize the debts arising from the relationship. The Court will then determine the effect of bankruptcy on these debts.

■ Pennsylvania law allows support payments to be made not only in the form of cash payments but also in the form of mortgage payments, payment of medical bills, etc. See *Warner v. Warner*, 198 Pa. Super. 124, 181 A.2d 888 (1962); *Commonwealth v. Miller*, 202 Pa.Super. 573, 198 A.2d 373 (1964).

The decision in *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) makes clear that what constitutes alimony, maintenance and support for purposes of nondischargeability is a matter of federal law. Further, the legislative history of § 523 makes clear that "What constitutes alimony, maintenance or support will be determined under bankruptcy laws, not state law." H.R.Rep.No.95–595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978 at 6319.

In *Wetmore v. Markoe*, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904) the Supreme Court stated:

> The bankruptcy law should receive such an interpretation which will effectuate its beneficent purposes, and not make it an instrument to deprive dependent wife and children of support and maintenance due them from the husband and father, which it has been the purpose to enforce. Systems of bankruptcy are designed to relieve the honest debtor from the weight of indebtedness which has become oppressive, and to permit him to have a fresh start in business or commercial life, freed from the obligations and responsibilities which may have resulted from business misfortunes. Unless positively required by direct enactment the courts should not presume a design upon the part of Congress, in relieving the unfortunate debtor, to make the law a means of avoiding enforcement of the obligation, moral or legal, devolved upon the husband to support his wife and to maintain and educate his children. 196 U.S. 77, 25 S.Ct. 175.

■ These principles remain viable in the Bankruptcy Code, Section 523. The Code does not interfere with state enforcement of support obligations. *American Tel. & Tel. Co. v. Merry*, 592 F.2d 118 (2nd Cir. 1979). See also *Cartledge v. Miller*, 457 F.Supp. 1146 (S.D.N.Y.1978), *Cody v. Riek-*

er, 454 F.Supp. 22 (E.D.N.Y.1978). In the case before us, the largest debt in question arose when the Plaintiff and Defendant as husband and wife obtained a Gramatan Home Improvement Loan to repair their jointly owned property. This debt is specifically included among the financial obligations the Defendant agreed to bear. Providing a house in which his children and their mother live is of the nature of support. It is clear from the evidence presented that the very low monthly support payments could not accomplish that result and was balanced against the Defendant's obligation to pay certain household debts. The expert testimony was clear that in view of the Defendant's net income of $600.00–$750.00 per month, the sum of $40.00 monthly would be very low support.

We conclude that the payment of these debts was actually in the nature of support and the Defendant's future obligation to pay these debts pursuant to the Agreement is not discharged by this proceeding.

Somewhat sadly it appears that this technique of low cash payments and higher obligations on leasehold debts permitted Plaintiff to claim a larger payment from the Department of Public Welfare. In fact, over the years the Department of Public Welfare has been the real provider of support for the children and their mother. The Plaintiff's low income now permits Neighborhood Legal Services to defend her in this matter. Therefore, so that all these matters may be adjudicated by a court of continuous jurisdiction, this Court grants relief from the automatic stay to the Plaintiff on any claim for change in support which might be properly raised by either party before the Domestic Relations Court of Pennsylvania.

An appropriate Order will be entered.