**In the Matter of Freddie Alman HUGHES, Debtor.**

**Freddie Alman HUGHES, Plaintiff,**

**v.**

**Julia Murlene Hazel HUGHES, et al., Defendants.**

**Bankruptcy No. 80–05596.
Adv. No. 81–0271.**

United States Bankruptcy Court, N. D. Alabama, S. D.

Dec. 15, 1981.

Jim Keyes, Birmingham, Ala., for Plaintiff/Debtor, Freddie Hughes.

Charles A. J. Beavers, Jr., Birmingham, Ala., for defendant, Julia Hughes.

Allen A. Ramsey, Birmingham, Ala., for First National Bank.

Russell Enfinger, Birmingham, Ala., for Carraway Methodist Hospital.

Jerry Beck, Trustee.

Jack Rivers, U. S. Trustee.

## OPINION

STEPHEN B. COLEMAN, Bankruptcy Judge.

## FACTS

Freddie Alman Hughes was divorced from his wife, Julia Hughes, on August 30, 1979. The Final Judgment of Divorce ratified and incorporated an agreement between the parties which proposed to settle their financial affairs. This agreement was executed on August 28, 1979. Thereafter, on the 14th day of October, 1980, Freddie Hughes filed his bankruptcy petition and was granted relief under Chapter 7 of the Bankruptcy Code.

The Debtor filed this Complaint to determine the dischargeability of certain debts listed in his petition. The debts in question are those set out in Paragraph 7 of the aforementioned divorce agreement. The text of that Paragraph is as follows:

7. The Plaintiff (Freddie Hughes) shall be responsible for and shall pay all bills contracted by the parties during the marriage, including the second mortgage on the residence of the house (sic), said second mortgage being in the approximate amount of $5,000 and monthly payments of $118.00 per month. In the event the Defendant (Julia Hughes) elects to sell the residence referred to herein then the Plaintiff shall pay off the 2nd mortgage on the residence within thirty (30) days after receiving notice from the Defendant of her intention to sell. Plaintiff shall be responsible for and shall make the necessary financial arrangements to pay off said second mortgage. The Plaintiff shall hold the Defendant harmless against any claims of any creditors in connection with the payment of any of the said bills.

It might be noted here that Julia Hughes was awarded the house in Paragraph 1 of the agreement, and she was responsible for the first mortgage thereon.

## ISSUES

Although Freddie Hughes listed thirteen creditors as defendants to his Complaint, the issues have been narrowed so that now only two debts are in question. The first debt is the second mortgage note to the First National Bank as described in Paragraph 7 above, and the second is a debt

owed to Carraway Methodist Hospital for emergency medical service rendered to Freddie Hughes. On both debts Julia Hughes was originally or secondarily liable. Therefore, the issue at hand is between Julia Hughes, who maintains that her former husband's promise to pay and hold her harmless from these debts is a promise to pay alimony or liabilities in the nature of alimony, and Freddie Hughes, who maintains that his promise to pay was a property settlement, and therefore dischargeable in bankruptcy.

■ 1. The main problem in interpreting Section 523(a)(5) of the Bankruptcy Code comes with defining the words "alimony," "maintenance," and "support." Whether the payment of certain debts is alimony or property settlement as defined in the Bankruptcy Code and when construed by a Federal Court is a Federal question. In spite of this fact, State law can and should be used to provide at least a basic guide for developing the Federal standard. *Fife v. Fife*, 1 Utah 2d 281, 265 P.2d 642 (1954); *In re Knabe*, 8 B.R. 53 (Bkrtcy. 1980); *In re Cartner*, 9 B.R. 543 (Bkrtcy. 1981); *In re Lineberry*, 9 B.R. 700 (Bkrtcy. 1981). After all, there is no Federal common law of domestic relations to fall back on. *In re Bishop*, 13 B.R. 304 (Bkrtcy.1981). And quoting from *In re Pelikant*, 5 B.R. 404, 406 (Bkrtcy.1980), ". . . nothing in the legislative history suggests that state law shall play no part in making that determination" (of whether an award is alimony or property settlement).

■ State law should also be used because the intent of the parties, as set forth in a divorce agreement, is a very important consideration when interpreting that agreement. Since it is usually lawyers, attuned and looking to state divorce law, who draft the agreements, that state law is relevant in determining the parties' intent. *Melichar v. Ost*, 7 B.R. 951, footnote 8 (D.C.1980).

■ In short, when determining the nature of an obligation, "a Court should look to the substance of the obligation, and not to labels imposed by state law" or imposed by language in the agreement itself. *In re Nunally*, 506 F.2d 1024 (5 Cir. 1975).

■ 2. Alimony is the allowance one spouse makes to the other to maintain and support him or her. Alimony in gross is the present value of the receiving spouse's right to be supported, sometimes called the inchoate marital rights of dower, homestead, and distributive share which are being terminated by the divorce. Periodic alimony is this same right to be supported, but in a current and continuous form, not a lump sum. *Dees v. Dees*, 390 So.2d 1060 (Ala.Civ.App. 1980). On the other hand, a property settlement is exactly what it purports to be, a division of the property of the marriage.

In simple terms, alimony may be awarded when one spouse needs to be supported and the other spouse is able to provide support. The respective needs and abilities are determined by comparing the income, earning power, future prospects, age, health, station in life, length of the marriage, and other factors. *Chancellor v. Chancellor*, 52 Ala. App. 10, 288 So.2d 794 (1974). The payment of alimony should preserve the economic status quo of the parties as it existed during the marriage. *Orr v. Orr*, 374 So.2d 895 (Ala.Civ.App.1980).

■ 3. In our case the divorce agreement sets out with particularity the obligation of Freddie Hughes in regard to the First National Bank note. He was to pay the total indebtedness, a sum certain. He could pay it in monthly installments according to First National Bank's terms unless and until Julia Hughes notified him of her intent to sell the house. Upon such notification, he had thirty (30) days to pay the debt in full. Payment does not appear to be dependent on whether or not the house was in fact sold. These characteristics place the debt within the category of either alimony in gross (lump sum), or a property settlement, both of which are nonmodifiable. *Hagar v. Hagar*, 293 Ala. 47, 299 So.2d 743 (1974); *Hartsfield v. Hartsfield*, 384 So.2d 1097 (Ala.Civ.App.1980). The same characteristics are present in the hospital debt. It too was a sum certain to be paid by Mr. Hughes.

I believe Paragraph 7 of the divorce agreement was intended by the parties to provide support and maintenance for Julia Hughes. Earlier numbered paragraphs of the agreement provided for the division of property between the two, e.g., the house went to Julia, the car went to Freddie, et cetera. The first phase of Paragraph 7 states in general terms that Mr. Hughes was to pay *all* the marital bills, and then with particularity includes the second mortgage as a marital indebtedness. Even though the note to First National Bank was secured by a mortgage on the house, the testimony is that the proceeds of this second mortgage went into an unsuccessful business venture of Mr. Hughes. The payment of this debt was not related to the transfer of the house to Mrs. Hughes. It is evident that unless this note, along with the other bills, was paid by Mr. Hughes, Julia Hughes would not be able to support herself and would not be able to provide a home for her family. The agreement therefore had the effect of balancing the incomes of the parties. Although Julia was not to receive the money directly, she was to benefit directly. She would be "maintained" by not having to pay obligations she indeed was unable to pay.

In this situation, Freddie Hughes' promise to pay the bills, and to hold Julia Hughes harmless, is in the nature of alimony, support, and maintenance. Section 523(a)(5) will not allow Mr. Hughes to be discharged as to the debts owed to First National Bank and to Carraway Methodist Hospital.

■ 4. The Plaintiff has also raised the issue of Julia Hughes' remarriage subsequent to the filing of this bankruptcy. He contends that if the divorce agreement required him to pay alimony, her remarriage is grounds for discontinuance of such alimony. This is true, but only in the case of periodic alimony. Although First National Bank is allowing Mr. Hughes to make periodic payments, Mrs. Hughes' benefit is based on the total sum due, an unchangeable lump sum amount. Likewise with the amount due Carraway Methodist Hospital.

The value to Julia Hughes is based on the value of her interest in the marriage estate at the time of the divorce. This alimony is nonmodifiable, and remains due even on the event of Julia's remarriage. *Hagar v. Hagar,* Supra; *Higginbotham v. Higginbotham,* 367 So.2d 972 (Ala.Civ.App.1979). In addition, Mrs. Hughes has the option of requiring Mr. Hughes to pay off the First National Bank debt in toto. This definitely takes the debt out of the "periodic alimony" category.

## CONCLUSION

In conclusion, I find that Freddie Alman Hughes' promise to pay the second mortgage to First National Bank and the bill owed to Carraway Methodist Hospital is a promise to provide alimony, support, or maintenance to his former wife, Julia Murlene Hazel Hughes. Therefore, these debts are nondischargeable in bankruptcy. An appropriate order will follow.