*In re* MARRIAGE OF NANCY LYTLE, Petitioner-Appellee, and
JOHN J. LYTLE, JR., Respondent-Appellant.

Second District   No. 81-565

Opinion filed May 5, 1982.

Charles M. Travis, of Travis, Tucker, Pavesich & Associates, of Lombard, for appellant.

Joseph V. Moschetti, of Moschetti & Meadowcroft, of Lisle, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The impact of the automatic stay provision under the Federal Bankruptcy Act (11 U.S.C. sec. 362 (Supp. III 1979)) upon proceedings in the circuit court for enforcement of property distribution under a judgment for dissolution of marriage, is before us in this appeal.

The marriage of petitioner, Nancy Lytle, to respondent, John J. Lytle, Jr., was dissolved in 1981. On March 5, 1981, the court issued a supplemental judgment by whose terms petitioner was awarded the parties' lakefront property in Michigan. Respondent was also to reimburse petitioner for all sums paid by her on account of the garnishment of her wages for a debt due to the Bank of Naperville and hold her harmless from all future garnishments arising out of that debt. By separate order entered the same date, respondent was ordered to pay the sum of $1,500 toward petitioner's attorney fees.

On April 8, 1981, petitioner filed a petition for a rule to show cause, alleging that respondent had failed to make any payment toward petitioner's attorney fees and had failed to communicate with respondent concerning the debts from which he had been ordered to hold her harmless. It was also alleged that petitioner had incurred a further garnishment proceeding by reason of respondent's total failure to settle or pay the claim which had resulted in those garnishments. The rule was issued, and a hearing thereon was held on June 29, 1981. At that time, respondent's counsel presented the court with a copy of a bankruptcy petition which had been filed on respondent's behalf in the United States Bankruptcy Court for the Northern District of Illinois on June 25.

At the hearing, respondent testified on his own behalf that his con-

duct was not intended as contemptuous, but that his financial circumstances were poor. He had first learned of the garnishment of petitioner's wages only three weeks before. An issue was raised as to whether respondent had improperly sold the boat dock at the Michigan property, and respondent, while admitting that the dock was not removed from the property until after the supplemental judgment, claimed that the sale had taken place beforehand, in February 1981.

Respondent's counsel advised the court that the filing of a bankruptcy "generally should stay proceedings" in State courts concerning the debts of the bankrupt, but the court, after ascertaining that the bankruptcy court had not issued a stay order, found that the pending Federal action did not obviate respondent's obligation to pay the debt for which petitioner's wages were being garnished. The court found that respondent's conduct concerning the sale of the boat dock and the "hold harmless" provision of the supplemental judgment was willful and contumacious. It ordered respondent incarcerated for 14 days beginning July 13, 1981, unless the dispute over these matters was resolved in the interim. The matter concerning respondent's obligation for attorney fees, including the effect of the bankruptcy thereon, was continued to July 14, 1981, and the mittimus was stayed until that date. On July 17, 1981, respondent filed a motion to reconsider and to stay further proceedings pending the outcome of the pending bankruptcy case. The court denied the motion, and respondent has appealed.

Respondent contends that the trial court erred in proceeding with an adjudication on the rule to show cause after being apprised that respondent had filed a petition for relief under Chapter 7 of the Bankruptcy Act. Respondent asserts that, as provided by section 362 of the Act (11 U.S.C. sec. 362 (Supp. III 1979)), the trial court was obliged to recognize that the filing of the bankruptcy petition operated as an automatic stay of State proceedings designed to enforce the property and attorney fees provisions of the supplemental judgment.

Section 362(a) provides that the filing of a petition under Chapter 7 of the Bankruptcy Act operates as a stay of

"(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

* * *

> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
> * * * ."

Exceptions to the automatic stay are set out in section 362(b) and, as herein applicable, include:

> "(1) under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor; (2) under subsection (a) of this section, of the collection of alimony, maintenance, or support from property that is not the property of the estate;
> * * * ."

Respondent asserts that the effect of this statute is to stay all proceedings relating to debts dischargeable in bankruptcy, and that since respondent's debts in the present case relate to obligations which are dischargeable (*i.e.*, the property settlement and attorney fees), the trial court was required to stay proceedings on the rule to show cause pending resolution of the bankruptcy case. Petitioner responds that the automatic stay does not prevent a State court from proceeding with a contempt action against the bankrupt, arising out of disobedience to a State court order made prior to the stay. Petitioner further contends that the award in this case is one "in the nature of alimony or maintenance," since the Illinois Marriage and Dissolution of Marriage Act, while eliminating wherever possible maintenance in the traditional sense, provides for the distribution of marital property in accordance with factors traditionally considered with respect to the question of maintenance; *i.e.*, the financial position of the parties and their ability to provide for their needs. Petitioner also asserts that respondent's obligations should be nondischargeable because they constitute an injury willfully and maliciously inflicted by respondent within the meaning of 11 U.S.C. sec. 523(a)(6) (Supp. III 1979).

# I

■■ We first conclude that where, as here, contempt is invoked as a sanction for failure to pay a judgment for money, or to compel the expenditure of money from a bankrupt's estate, rather than to uphold "the dignity of the court," the proceedings are not exempt from the automatic stay. *Guariglia v. Community National Bank & Trust Co.* (E.D.N.Y. 1974), 382 F. Supp. 758, 761; *aff'd without opinion* (2d Cir. 1975), 516 F.2d 896.

*David v. Hooker, Ltd.* (9th Cir. 1975), 560 F.2d 412, relied upon by respondent, does not state a different rule. In *David* the issue was a litigant's failure to comply with a prior discovery order. The court held that notwithstanding the intervening filing of a bankruptcy petition the

litigant could be held in contempt and assessed a monetary sanction to compensate the other party to the case for expenses and attorney fees. The court did not, however, rule that contempt may be used to enforce any State ordered obligation, regardless of the existence of the automatic stay. To the contrary, the court quoted with approval language from *In re Spagat* (S.D.N.Y. 1933), 4 F. Supp. 926, 927, that the automatic stay did not affect the validity of State court contempt proceedings which "did not attempt in any way to interfere with the property which had passed to the control of the bankruptcy court; [the State court] sought merely to vindicate its dignity which had been affronted by the contumacious conduct of a person who ignored its order." (560 F.2d 412, 418.) Thus, while a court may enforce obedience to its orders and impose sanctions, including a monetary penalty, for contempt, *David* does not support a claim that a judgment or decree requiring the payment of money may be enforced during the pendency of a bankruptcy by the sanction of contempt. Such a rule would place a bankrupt's judgment creditors in a position superior to other creditors in clear violation of the policies underlying the Bankruptcy Act by requiring the bankrupt to pay claims which had been reduced to judgment in order to avoid contempt.

## II

Petitioner also contends that respondent's obligations should be nondischargeable because they constitute a debt "in the nature of alimony, maintenance, or support," which is exempted from discharge under section 523(a)(5) of the Bankruptcy Code (11 U.S.C. sec. 523(a)(5) (Supp. III 1979)). We conclude, however, that the debt in question is dischargeable and that the proceedings should have been stayed.

■■■ Whether a debt is nondischargeable as being in the nature of alimony, maintenance or support (see 11 U.S.C. sec. 362(b)(2), sec. 523(a)(5) (Supp. III 1979)) is a matter of Federal, not State, law. (*In re Harrod* (1982), 16 B.R. 711; *In re Diers* (1980), 7 B.R. 18, 20.) State law may be used to develop Federal standards or to ascertain the incidents or nature of the debt to determine whether it fits within the exception. (*In re Hughes* (1981), 16 B.R. 90, 92; *In re Tilmon* (1981), 9 B.R. 979, 987; *In re Pelikant* (1980), 5 B.R. 404, 407-08.) Federal and State courts have concurrent jurisdiction to determine whether debts are nondischargeable under section 523(a)(5). *In re Romeo* (1981), 16 B.R. 531, 534; *In re Williams* (1980), 3 B.R. 401, 403.

Exceptions to the rule of dischargeability are to be narrowly construed in line with the "fresh start" policy of the Bankruptcy Code. (*In re Daiker* (1980), 5 B.R. 348, 351, 352; *In re Netherton* (1979), 2 B.R. 50, 53.) The label attached to a decree and the language of the decree are not controlling in determining dischargeability; rather the court must look to

the substance of the decree to determine the essential nature of the obligation. *In re Smith* (1980), 3 B.R. 224, 230.

■■ Property settlement obligations to a former spouse are dischargeable in bankruptcy, while obligations to provide maintenance and support are nondischargeable. (*In re LaFleur* (1981), 11 B.R. 26, 28-29.) An obligation to hold an ex-wife harmless for certain debts may fall into either category (*In re Massimini* (1981), 8 B.R. 428, 430), and will be nondischargeable if it is actually in the nature of alimony, maintenance or support. *In re Massimini* (1981), 8 B.R. 428, 431; *In re Miller* (1981), 8 B.R. 174, 176; *In re Daiker* (1980), 5 B.R. 348, 351.

The criteria used to determine which category a given debt falls into include, among others, the nature of the obligation assumed, whether there are children to be provided for, the relative earning power of the spouses, and the adequacy of support absent the debt assumption. (*In re Petoske* (1982), 16 B.R. 412.) Courts are more likely to find a debt dischargeable where its assumption is over and above what is necessary for support and maintenance of the wife and any children (*In re Breaux* (1981), 8 B.R. 218, 220), where the spouse to whom the debt is owed was, at the time of the decree, young, healthy, employed and without dependents (*In re Williams* (1980), 3 B.R. 401, 404), where each spouse assumes considerable responsibility for servicing debts on marital property (*In re Thompson* (1981), 13 B.R. 830, 832), and where the obligation assumed does not terminate on the death or remarriage of the obligee spouse (*In re Taff* (1981), 10 B.R. 101, 104).

■■ According to such criteria, the debt at issue here is in the nature of a property settlement and should not be excepted from the automatic stay provision of the Bankruptcy Act. The trial court's decree specifically states that petitioner "is able-bodied, healthy, and currently employed and has those skills necessary to enable her to support herself." The parties have no children, and the "hold harmless" agreement does not terminate on petitioner's remarriage. The decree makes the petitioner responsible for all debts relating to the Michigan property and half of the debt to her parents, the latter amount by itself exceeding the total debt to the Bank of Naperville. It is manifest that the decree (and specifically the "hold harmless" provision here) did not constitute an attempt to equalize the spouses' income or maintain the petitioner in the manner to which she was accustomed as respondent's wife. *In re Hughes* (1981), 16 B.R. 90, 92; *In re Mineer* (1981), 11 B.R. 663, 665; *In re Daiker* (1980), 5 B.R. 348, 352.

■■ Finally, petitioner argues that respondent's obligations are nondischargeable because they constitute "willful and malicious injury" to petitioner within the meaning of section 523(a)(6) of the Bankruptcy Code (11 U.S.C. sec. 523(a)(6) (Supp. III 1979)). Whatever the merits of petitioner's argument, we lack jurisdiction to determine whether respondent's debts

are exempt from discharge under this section. Such a determination is committed to the exclusive jurisdiction of Federal bankruptcy courts; a creditor desiring to have his claim held nondischargeable under section 523(a)(6) must file a complaint for such determination in bankruptcy court, or the debt will be discharged. *In re Romeo* (1981), 16 B.R. 531, 534; 11 U.S.C. sec. 523(c) (Supp. III 1979); 3 Collier on Bankruptcy sec. 523.16, at 523—128 (15th ed. 1981).

■■ The trial court did not rule on the applicability of the automatic stay to the enforcement of respondent's obligation to pay petitioner's attorney fees. We believe, however, that considerations of judicial economy justify our disposing of this issue, and hold that the obligation to pay these attorney fees is not exempt from the automatic stay provision of the Bankruptcy Code. Much of our discussion concerning the "hold harmless" provision is applicable here. There is no indication that the award of attorney fees was based on petitioner's financial need, *i.e.*, that it was necessary for her maintenance or support, and the extent of the burdens assumed by petitioner under the supplemental dissolution decree negates any such inference. The obligation to pay attorney fees would therefore not be in the nature of alimony, maintenance or support under Federal bankruptcy law. See *In re King* (1981), 15 B.R. 127, 130.

We are aware of several Illinois cases holding that an award of attorney fees in a dissolution proceeding is in the nature of alimony, maintenance or support and thus nondischargeable. (*In re Marriage of Pedersen* (1979), 77 Ill. App. 3d 716; *King v. King* (1978), 57 Ill. App. 3d 423; *Morrey v. Morrey* (1974), 24 Ill. App. 3d 77; see also *In re Cornish* (7th Cir. 1976), 529 F.2d 1363; *Merriman v. Hawbaker* (E.D. Ill. 1934), 5 F. Supp. 432.) These cases, however, were decided under the now-defunct rule that whether certain obligations were alimony, maintenance or support was to be determined according to State, not Federal, law. Moreover, the rationale of these cases, that payment of attorney fees springs from the duty of the husband to support his wife, rests on the assumption that attorney fees are granted in accordance with statute (Ill. Rev. Stat. 1979, ch. 40, par. 508, formerly ch. 40, par. 16), *i.e.*, solely upon a finding that the financial resources of the parties are disparate and that payment of attorney fees by one spouse is necessitated by the other spouse's financial inability to pay. (See *In re Marriage of Miller* (1980), 84 Ill. App. 3d 931, 935-36; *In re Marriage of Sanborn* (1979), 78 Ill. App. 3d 146, 152.) Here no such finding was made by the court or even urged by the petition for attorney fees, and such a finding would be inconsistent with the conclusions and obligations of the supplemental dissolution decree.

We thus conclude that the proceedings to enforce payment of attorney fees are not exempt from the automatic stay provision of the

Bankruptcy Code, and were stayed by the filing of the bankruptcy petition.

The judgment is therefore reversed and the cause remanded with directions to enter the requested order of stay.

Reversed and remanded with directions.

UNVERZAGT and VAN DEUSEN, JJ., concur.