BARNETT, APPELLEE, *v.* BARNETT, APPELLANT.

[Cite as Barnett *v.* Barnett (1984), 9 Ohio St. 3d 47.]

(No. 82-1801—Decided January 18, 1984.)

48

*Mr. Scott H. Ray, Jr.,* for appellee.

*Messrs. Jarnicki & Logsdon, Mr. Harold Jarnicki* and *Mr. Robert G. Logsdon,* for appellant.

HOLMES, J. First, we must define in greater detail the issue presented here — or, more precisely, we must state what is not the specific issue presented. The question is not whether the automatic stay provision of Section 362, Title 11, U.S. Code, would thwart a state court's inherent or

statutory contempt power, where the exercise of such power is utilized to uphold the dignity of the court. Where the state court is exercising its contempt powers in order to so maintain the dignity of the court and its process, rather than being a step to collect on a judgment, the cases have rather uniformly held that the automatic stay of the Bankruptcy Code is not applicable.[4] See, *e.g.*, *In re McRoberts* (W.D.N.Y. 1936), 17 F. Supp. 82; *In re Bell* (E.D.N.Y. 1943), 53 F. Supp. 993; *Guariglia* v. *Community Natl. Bank & Trust Co.* (E.D.N.Y. 1974), 382 F. Supp. 758.

It also appears that the obligation or debt of the bankrupt husband to his divorced spouse, which was contained in the divorce decree and later included in the bankruptcy schedules, was considered by the courts below, and the parties here, to be a debt that was not excepted to discharge in bankruptcy under Section 523, Title 11, U.S. Code; and that the enforcement proceeding of the court of common pleas was subject to the automatic stay provisions of Section 362(a), and not excepted under Section 362(b).

The parties do not specifically present us with the issue of whether the divorce decree sets forth a nondischargeable obligation for alimony, maintenance, or support; or whether it sets forth dischargeable obligations relating to the division of marital property. However, it is of value here, as background for our discussion, to briefly allude to the general law and rules which encompass this area of the law. A very concise, but quite inclusive, resume of the general principles and criteria in the determination of the dischargeability of post-marital obligations is found in the case of *In re Marriage of Lytle* (1982), 105 Ill. App. 3d 1095, 435 N.E. 2d 522, which, in pertinent part, at pages 1099-1100, states:

"Whether a debt is nondischargeable as being in the nature of alimony, maintenance or support (see 11 U.S.C. sec. 362(b)(2), sec. 523(a)(5) (Supp. III 1979)) is a matter of Federal, not State, law. (*In re Harrod* [1982], 16 B.R. 711; *In re Diers* [1980], 7 B.R. [Bankruptcy Reporter] 18, 20.) State law may be used to develop Federal standards or to ascertain the incidents or nature of the debt to determine whether it fits within the exception. (*In re Hughes* [1981], 16 B.R. 90, 92; *In re Tilmon* [1981], 9 B.R. 979, 987; *In re Pelikant* [1980], 5 B.R. 404, 407-08.) Federal and State courts have concurrent jurisdiction to determine whether debts are nondischargeable under section 523(a)(5). *In re Romeo* (1981), 16 B.R. 531, 534; *In re Williams* (1980), 3 B.R. 401, 403.

---

[4] In *David* v. *Hooker Ltd.* (C.A. 9, 1977), 560 F. 2d 412, the issue was a litigant's failure to comply with a prior discovery order. The court held that, notwithstanding the intervening filing of a bankruptcy petition, the litigant could be held in contempt and assessed a monetary sanction to compensate the other party to the case for expenses and attorney fees. See, also, *In re Spagat* (S.D.N.Y. 1933), 4 F. Supp. 926, wherein it was held that the automatic stay did not affect the validity of state court contempt proceedings which "did not attempt in any way to interfere with the property which had passed to the control of the bankruptcy court; * * * [the state court] sought merely to vindicate its dignity which had been affronted by the contumacious conduct of a person who ignored its order." *Id.*

"* * * Property settlement obligations to a former spouse are dischargeable in bankruptcy,[5] while obligations to provide maintenance and support are nondischargeable. (*In re LaFleur* [1981], 11 B.R. 26, 28-29.) An obligation to hold an ex-wife harmless for certain debts may fall into either category (*In re Massimini* [1981], 8 B.R. 428, 430), and will be nondischargeable if it is actually in the nature of alimony, maintenance or support. *In re Massimini* (1981), 8 B.R. 428, 431; *In re Miller* (1981), 8 B.R. 174, 176; *In re Daiker* (1980), 5 B.R. 348, 351.

"The criteria used to determine which category a given debt falls into include, among others, the nature of the obligation assumed, whether there are children to be provided for, the relative earning power of the spouses, and the adequacy of support absent the debt assumption. (*In re Petoske* [1982], 16 B.R. 412.)"[6]

We now address the specific question of whether the automatic stay provision in Section 362, Title 11, U.S. Code, is violative of the Tenth Amendment to the United States Constitution insofar as it stays a state court contempt action to enforce a divorce decree dividing marital property. We answer such query in the negative.

The Constitution of the United States, in Section 8, Article I, specifically grants to the Congress of the United States the authority to establish "uniform laws on the subject of bankruptcies throughout the United States." Under authority created by Section 8, Article I, Congress enacted the Bankruptcy Reform Act of 1978.

The Tenth Amendment to the Constitution of the United States provides for a reservation of certain powers to the "States respectively or to the people," of "the powers not delegated to the United States by the Constitution, nor prohibited by it to the States." Where certain powers are specifically granted to the federal government, the exercise of jurisdiction within these areas by the states would be precluded, unless certain circumstances and criteria are shown to exist which would interfere with the state's traditional "integral governmental functions." *National League of Cities* v. *Usery* (1976), 426 U.S. 833, 855. In that case, the United States Supreme Court construed certain amendments to the Fair Labor Standards Act which prescribed minimum wages and maximum hours to be paid to public employees by the states, and their various political subdivisions. The court, in construing such amendments under the Commerce Clause of Article I of the

---

[5] Regardless of the dischargeability of a post-marital obligation, the obligee spouse may enter the bankruptcy proceeding as an ordinary creditor of the bankrupt and share pro rata in the distribution upon liquidation of the obligor spouse's assets.

[6] For a scholarly analysis of the dischargeability in bankruptcy of post-marital obligations, see Munson, Discharge of Post(-)Marital Support Obligations Under the New Bankruptcy Code (1981), 4 Harvard Women's L. J. 177. See, also, 3 Collier on Bankruptcy (15 Ed. 1983), Paragraph 523.15, Alimony, Maintenance, Child Support, Property Settlement Agreement. Section 523 (a)(4).

United States Constitution, held that the laws unconstitutionally interfered with the activities of the states being carried out in their sovereign capacities. Accordingly, the court stated:

"* * * Congress has sought to wield its power in a fashion that would impair the States' 'ability to function effectively in a federal system,' * * * [*Fry* v. *United States* (1975), 421 U.S. 542, 547, fn. 7,]" and "[t]his exercise of congressional authority does not comport with the federal system of government embodied in the Constitution." *Id.* at 852.

"Congress may not exercise that power [to regulate commerce] so as to force directly upon the States its choices as to how essential decisions regarding the conduct of integral governmental functions are to be made. [*Fry* v. *United States, supra,* distinguished; *Maryland* v. *Wirtz* (1968), 392 U.S. 183, overruled.]" *Id.* at 855.

Further, in holding that such amendments impermissibly interfered with the integral governmental functions of the states and their subdivisions, the court pointed out, in *National League of Cities, supra,* that it was not interpreting laws that affected only individuals or business enterprises, but, instead, was construing these amendments in the light of whether the provisions infringed a constitutional prohibition running in favor of "the States as States." *Id.* at 854. The court noted at page 840 that in construing laws enacted by Congress carried out pursuant to the plenary power of Congress under the Commerce Clause, a different standard would be applied "[w]hen considering the validity of asserted applications of this power to wholly private activity."

Another, and more recent, opinion of the United States Supreme Court which involved Tenth Amendment claims of impermissible interference by Congress with "traditional governmental functions" is that of *Hodel* v. *Virginia Surface Mining & Reclamation Assn.* (1981), 452 U.S. 264. In *Hodel,* the Surface Mining Control and Reclamation Act was being challenged by the Virginia Surface Mining & Reclamation Association, Inc. Among such challenges was that the Act which prescribed certain performance standards on "steep slopes," including a requirement that an operator return the site to its "approximate original contour," violated the Tenth Amendment limitation on Congressional exercise of the commerce power as interfering with the states' traditional sovereign function of regulating land use.

The Supreme Court, in upholding the provisions of the Surface Mining Control and Reclamation Act, held at pages 288-290 that:

"[T]he steep-slope provisions of the Surface Mining Act govern only the activities of coal mine operators who are private individuals and businesses," and "[do not regulate] the 'States as States.' " [Cf. *National League of Cities* v. *Usery, supra.*] "[T]he Tenth Amendment [does not limit] congressional power to pre-empt or displace state regulation of private activities affecting interstate commerce."

In *Hodel,* the Supreme Court at pages 287-288 set forth three re-

quirements that would have to be met in order for there to be a successful challenge to congressional commerce power legislation under the reasoning of *National League of Cities, supra*:

"* * * First, there must be a showing that the challenged statute regulates the 'States as States.' * * * Second, the federal regulation must address matters that are indisputably 'attribute[s] of state sovereignty.' * * * And third, it must be apparent that the States' compliance with the federal law would directly impair their ability 'to structure integral operations in areas of traditional governmental functions.' * * *"

It would seem reasonable that the same requirements should apply in Tenth Amendment analysis of provisions of the Federal Bankruptcy Act enacted by Congress, pursuant to specific constitutional grant of authority, to control the commercial activities of private individuals and business entities.

Applying the *Hodel* requirements, first, we find that the automatic stay provision of the Federal Bankruptcy Act, Section 362, Title 11, U.S. Code, is not directed at the states but, rather, at the individual debtors and creditors involved in the bankruptcy proceedings. Further, in that the automatic stay provision affects only those debts dischargeable in bankruptcy, the scope of the automatic stay provision is thereby limited to such debts, and in this regard does not affect the state. Specifically, Sections 362(b)(1), (4) and (5) exempt traditional state functions by not staying actions to enforce a state's police or regulatory power. Additionally, as noted in *Lytle, supra,* Section 362(b)(2) does not stay alimony, maintenance, or support, which are elements traditionally within a state's concern for the protection of its citizens. Therefore, we conclude that the first requirement of *Hodel* is not met, in that the automatic stay provision does not attempt to regulate the "States as States."

Second, we hold that Section 362, Title 11, U.S. Code, makes no attempt to address matters that are "indisputably attributes of state sovereignty." Matters of bankruptcy are not indisputably matters of state sovereignty but, rather, matters of exclusive jurisdiction given by Congressional Act to bankruptcy courts pursuant to the Constitution of the United States. In order for a bankruptcy court to properly carry out its functions, it must have the ability to determine claims that are dischargeable. The automatic stay provision was embodied within the Federal Bankruptcy Act in order to allow the court a period of time to make the necessary determinations.[7] As to the

---

[7] The legislative history of the amendments to the Federal Bankruptcy Act found in the Notes of Committee on the Judiciary, Senate Report No. 95-989, is explanatory of this stay provision:

"The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." (Title 11, U.S. Code Anno., at page 419.)

federal aspect of bankruptcy court proceedings and determinations, we find the following in Case Comment, 50 American Bankruptcy L. J. (1976) 175, 176-177:

"In ruling on the dischargeability of a debt the bankruptcy court is not bound by state law. The bankruptcy court does not sit as another state court as in diversity cases. Rather, it sits as a federal court applying federal law. The doctrine of *Erie R.R.* v. *Thompkins* [*sic*] [(1938), 304 U.S. 64] is not applicable."

Third, an analysis of the underlying purposes of the Federal Bankruptcy Act and, particularly, the automatic stay provision of Section 362, brings us to the conclusion that such section does not "directly impair" the state's ability "to structure integral operations in areas of traditional governmental functions." It is rather universally acknowledged that a judicial power of the highest order of a state court is that of the inherent power of holding in contempt perpetrators of contumacious acts that affront the court. *Harris* v. *Harris* (1979), 58 Ohio St. 2d 303 [12 O.O.3d 291]. Such is indeed an exercise of a traditional governmental function. However, Section 362, Title 11, U.S. Code, does not foreclose the use of contempt powers by state courts in matters generally within divorce proceedings. Again, in order for the automatic stay provision to have effect, the debt claimed by the petitioner in bankruptcy must be a dischargeable debt. Although, by specific inclusion in the Act, division and allocation of marital property have been considered along with bills and debts to be dischargeable, other aspects of state court divorce decrees, *i.e.*, alimony, maintenance and support, have been excepted. In these latter areas the Bankruptcy Code leaves intact the state court's ability to exercise its contempt powers in matters that have been traditionally left to the states.[8]

Based on all of the foregoing, we hold that the automatic stay provision as provided for in Section 362, Title 11, U.S. Code, is not violative of the Tenth Amendment to the United States Constitution insofar as it stays a state court contempt action to enforce a divorce decree dividing marital property.

Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, C. BROWN and J. P. CELEBREZZE, JJ., concur.

---

"The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors." (Title 11, U.S. Code Anno., at page 410.)

[8] It may be noted at this point that careful attention to the draftsmanship of separation agreements that are to be incorporated within decrees of the domestic relations court could conceivably anticipate the future filing in bankruptcy courts, and provide for the obligations of the parties accordingly.