*In re* MARRIAGE OF JERRY L. PORTER, Petitioner and Counterrespondent-Appellant, and DORIS J. PORTER, n/k/a Doris J. Wenzel, Respondent and Counterpetitioner-Appellee.

Fourth District   No. 4—91—0717

Opinion filed June 4, 1992.

Leanna L. Karnopp and S. Linn Baker, both of Vonachen, Lawless, Trager & Slevin, of Peoria, for appellant.

Robert G. Kirchner, of Lerner & Kirchner, of Champaign, for appellee.

JUSTICE LUND delivered the opinion of the court:

This is an appeal by petitioner Jerry L. Porter from an order of the circuit court of De Witt County, holding certain mortgage payments ordered to be paid by a marriage dissolution judgment to be in the nature of maintenance and support rather than as division of property. Petitioner contends the payments were property settlement in nature and dischargeable by his recent bankruptcy proceedings. On motion of the appellee we have reached a determination that this ap-

peal is not properly before us and must be dismissed on jurisdictional grounds. Although we are under no obligation to discuss the substantive merits of this case, we feel this case is one where we might, with profit, set forth an alternative ground for the decision we have reached, for on substantive grounds alone, the opinion of the trial court must be affirmed. See *Kwak v. St. Anthony De Padua Hospital* (1977), 54 Ill. App. 3d 719, 369 N.E.2d 1346; *Berber v. Hass* (1965), 57 Ill. App. 2d 109, 207 N.E.2d 96.

### BANKRUPTCY

Child-support payments and maintenance payments are not dischargeable in bankruptcy unless they are assigned. Property settlement debts are dischargeable under the Bankruptcy Code (11 U.S.C. §§101 through 1103 (1988)). See 11 U.S.C. §523(a)(5) (1988).

### BACKGROUND

A judgment of dissolution of marriage was entered by the circuit court of Du Page County on either December 20, 1983, or January 5, 1984, dissolving the marriage of petitioner and respondent Doris J. Porter, n/k/a Doris J. Wenzel. This judgment incorporated and approved a document consisting of 14 single-spaced, 8½- by 14-inch pages and entitled "SEPARATION AGREEMENT." Attached to the agreement were exhibit A, listing debts to be assumed by the wife, and exhibit B, listing debts to be assumed by the husband. The agreement was divided into 11 articles.

Article VI of the agreement was entitled "UNALLOCATED FAMILY SUPPORT AND CHILD SUPPORT," and this article contains seven paragraphs, the following of which are relevant to this opinion:

"1. The husband shall pay to the wife, as and for her support and the support of QUINTIN and MICHELLE PORTER (the minor children of the parties), the sum of thirteen hundred dollars ($1,300.00) each and every month, commencing with December 1, 1983 and continuing through October 31, 1988. *** In the event of the death of either party or the remarriage of the wife, the unallocated support as provided herein shall immediately terminate. In no event shall unallocated support continue after October 31, 1988. Further, no other conditions or events other than those which are specifically set forth hereinabove, shall cause a termination of unallocated family support.

The unallocated family support of thirteen hundred dollars ($1,300.00) per month shall be reduced to the sum of eleven

hundred dollars ($1,100.00) per month upon the latest to occur of the following events:

    a. Quintin Porter's completion of high school, or

    b. Quintin Porter attaining age eighteen (18) years.

2. Any portion of unallocated family support deemed to be maintenance by a court of competent jurisdiction is to be non-modifiable in amount and duration.

* * *

5. The wife hereby waives any and all rights she might have to maintenance from the husband other than is specifically provided for hereinabove in paragraph no. 1 of this Article as unallocated family support."

Under Article X, "PROPERTY SETTLEMENT," petitioner agreed to convey title to the family residence to respondent on the effective date of the settlement agreement. Respondent was to hold petitioner harmless for the first mortgage debt of approximately $19,500. The agreement, under Article X(1), then stated in part:

"The title to the above described residence is the collateral securing two loans from the Du Page Schools Credit Union, having a total balance in excess of thirty six thousand eight hundred and seventy dollars ($36,870.00). It is the intention of the parties that the husband shall reduce the principal balance of both loans to the sum of fourteen thousand ($14,000.00) dollars.

The reduction in the principal balance of both loans to fourteen thousand dollars ($14,000.00) shall be paid by the husband to the Du Page Schools Credit Union in a timely fashion as required by the promissory notes for each obligation. One promissory note requires 180 monthly payments of $267.00 and the second loan requires 180 monthly payments of $218.00. Both obligations are presently charging interest at the rate of 15% per annum.

The husband shall make minimum payments of $485.00 per month so long as he has an obligation to make unallocated support payments to the wife as has been previously set forth herein. In the event that the principal balance of the two loans owed to the Credit Union have not been reduced by fourteen thousand dollars ($14,000.00) by the time the obligation of unallocated support to the wife has terminated, then the husband shall immediately increase his payments to the Du Page Schools Credit Union by $200.00 per month, so that the total monthly payment shall be $685.00 per month.

In the event that the wife, in her discretion, sells the marital residence, it will be necessary for her to retire both the first mortgage and all outstanding loans owed to the Du Page Schools Credit Union from the gross sale proceeds. Any unpaid portion of the reduction in the principal balance of the two loans owed by the husband to the Du Page Schools Credit Union to fourteen thousand dollars ($14,000.00) shall become a debt and obligation of the husband to the wife, bearing interest at the rate of 15% per annum, and the husband shall make the same monthly payment to the wife as was required to be made on the two loans to the Du Page Schools Credit Union as is set forth hereinabove.

*The agreement by the husband to reduce the outstanding indebtedness on the marital residence* to fourteen thousand dollars (14,000.00) *is in the nature of support for the wife* in that she would be unable to meet her reasonable needs and contribute to the needs of the minor children if she was required to make such payments by the terms of this separation agreement." (Emphasis added.)

Article X(8) referred to debts to be paid, listing attached "Exhibit A" as respondent wife's obligation and "Exhibit B" as petitioner husband's obligation. Exhibit A included "Du Page Schools Credit Union[ ] (approximate balance after husband's reduction of second mortgage to $14,000.00), approximately $13,463.00." Exhibit B included "Du Page Schools Credit Union, approximately $20,231.13."

In May 1986 respondent sold the house and retired the encumbrances. Petitioner subsequently fell behind in his payments, which resulted in respondent's seeking court action to collect what would have been the second-mortgage payments. After various pleadings and procedures connected with the collection process, an "AMENDED AGREED ORDER" was entered by the circuit court of De Witt County which found the parties had "entered into a Stipulation resolving all issues." That order found petitioner's obligation to respondent to be $30,000, payable in both lump sum and installment payments. The order provided in part:

"3. The obligation [of petitioner] to pay to the aforesaid [respondent the] sum of $30,000.00 is acknowledged by the parties to be a support obligation and is in satisfaction of and compliance with obligations of [petitioner] as set forth in paragraph 1. of Article X of the Separation Agreement of the parties dated November 30, 1983, as incorporated by reference into the Judg-

ment of Dissolution of Marriage entered on December 20, 1983."

On July 9, 1990, petitioner's notice of bankruptcy was filed. Respondent's motion to determine dischargeability of the amended agreed order signed on June 25, 1990, was filed in the circuit court of De Witt County on March 11, 1991. This resulted from transfer of the dischargeability issue from the bankruptcy court to the Illinois courts. The trial court subsequently held the debt was to be support and not subject to discharge. The decision was basically based on the 1983 separation agreement, but evidence from respondent relative to the condition of the parties existing at the time of the settlement agreement was introduced.

## THE LAW

■ Section 523(a)(5) of the Bankruptcy Code allows for nondischargeability of marital debts to be paid by one of the parties to a dissolution order, if the liability is in the nature of alimony, maintenance, or support. 11 U.S.C. §523(a)(5) (1988).

"Whether a debt is nondischargeable as being in the nature of alimony, maintenance or support (see 11 U.S.C. sec. 362(b)(2), sec. 523(a)(5) (Supp. III 1979)) is a matter of Federal, not State, law. (*In re Harrod* (1982), 16 B.R. 711; *In re Diers* (1980), 7 B.R. 18, 20.) State law may be used to develop Federal standards or to ascertain the incidents or nature of the debt to determine whether it fits within the exception. (*In re Hughes* (1981), 16 B.R. 90, 92; *In re Tilmon* (1981), 9 B.R. 979, 987; *In re Pelikant* (1980), 5 B.R. 404, 407-08.) Federal and State courts have concurrent jurisdiction to determine whether debts are nondischargeable under section 523(a)(5). *In re Romeo* (1981), 16 B.R. 531, 534; *In re Williams* (1980), 3 B.R. 401, 403.

Exceptions to the rule of dischargeability are to be narrowly construed in line with the 'fresh start' policy of the Bankruptcy Code. (*In re Daiker* (1980), 5 B.R. 348, 351, 352; *In re Netherton* (1979), 2 B.R. 50, 53.) The label attached to a decree and the language of the decree are not controlling in determining dischargeability; rather the court must look to the substance of the decree to determine the essential nature of the obligation. *In re Smith* (1980), 3 B.R. 224, 230.

Property settlement obligations to a former spouse are dischargeable in bankruptcy, while obligations to provide maintenance and support are nondischargeable. (*In re LaFleur* (1981),

11 B.R. 26, 28-29.) An obligation to hold an ex-wife harmless for certain debts may fall into either category (*In re Massimini* (1981), 8 B.R. 428, 430), and will be nondischargeable if it is actually in the nature of alimony, maintenance or support. *In re Massimini* (1981), 8 B.R. 428, 431; *In re Miller* (1981), 8 B.R. 174, 176; *In re Daiker* (1980), 5 B.R. 348, 351.

The criteria used to determine which category a given debt falls into include, among others, the nature of the obligation assumed, whether there are children to be provided for, the relative earning power of the spouses, and the adequacy of support absent the debt assumption. (*In re Petoske* (1982), 16 B.R. 412.) Courts are more likely to find a debt dischargeable where its assumption is over and above what is necessary for support and maintenance of the wife and any children (*In re Breaux* (1981), 8 B.R. 218, 220), where the spouse to whom the debt is owed was, at the time of the decree, young, healthy, employed and without dependents (*In re Williams* (1980), 3 B.R. 401, 404), where each spouse assumes considerable responsibility for servicing debts on marital property (*In re Thompson* (1981), 13 B.R. 830, 832), and where the obligation assumed does not terminate on the death or remarriage of the obligee spouse (*In re Taff* (1981), 10 B.R. 101, 104)." *In re Marriage of Lytle* (1982), 105 Ill. App. 3d 1095, 1099-1100, 435 N.E.2d 522, 526.

■ Collier Family Law and the Bankruptcy Code (MB) paragraph 6.04[2] (1991) (hereinafter Collier Family Law) lists the various factors to be considered in making a determination on the question of dischargeability. First, the intent of the parties or the court in fixing the obligation and the purpose of the obligation in light of the parties' circumstances at the time of the dissolution is important. (Collier Family Law (MB) ¶6.04[2] (1991).) The label given is not binding; the obligation must actually be in the nature of maintenance or support. (Collier Family Law (MB) ¶6.04[3] (1991).) Probably one of the most important factors in assessing the intention of the parties is the financial situation of the parties at the time the obligation is incurred. If the spouse would have difficulty in providing for herself (or herself and the children) absent the obligation, the inclination is to treat the payment of a debt as maintenance or support. Collier Family Law (MB) ¶6.04[4] (1991).

Second, the overall property division at the time of settlement must be considered at least two ways: (1) the fact that lack of a spouse's receipt of substantial assets reflects the need for support, and (2) if the payment due the nondebtor spouse is clearly identified

as proceeds of a sale of what had been a marital asset. (Collier Family Law (MB) ¶6.04[5] (1991).) Third, another factor to consider is whether payment terminates on death, remarriage, or the children coming of age. (Collier Family Law (MB) ¶6.04[6] (1991).) Fourth, when the obligation due is a lump-sum amount or a limited number of periodic payments over a relatively short period of time, it is more likely to be considered property settlement and not support. However, long-term monthly payments are more likely to be considered support. Collier Family Law (MB) ¶6.04[7] (1991).

Fifth, waivers of maintenance in the settlement agreement are relevant in determining whether an installment payment is support or property settlement. However, this is not necessarily controlling. If an apparent need for support exists, such may outweigh the significance of the specific waiver when interpreting the particular installment payment provided for in the property settlement. (Collier Family Law (MB) ¶6.04[8] (1991).) Sixth, the ability to obtain modification is a factor to be weighed. Collier Family Law (MB) ¶6.04[9] (1991).

Seventh, tax treatment of the obligation is a factor to be considered in determining intentions of the parties. The various changes in the Internal Revenue Code of 1986 (26 U.S.C. §1 et seq. (1988)) considered in relation to the date of the agreement becomes relevant in determining how the parties treated the taxability issue. Collier Family Law (MB) ¶6.04[10] (1991).

A small minority of courts have considered current circumstances of the parties at the time of the dischargeability determination. This is a questionable practice, because the intention should be determined from facts existing at the time the court entered its order or the time the agreement was approved. Collier Family Law (MB) ¶6.04(11).

Where a spouse who agrees to make mortgage payments has the greater income of the two parties, and the nonpaying spouse lives in the property with the couple's children, the payments will usually be found to be in the nature of providing shelter and, thus, treated as support payments. Collier Family Law (MB) ¶6.05[2] (1991).

### TRIAL COURT DECISION

■ Petitioner contends the trial court was not presented with sufficient evidence to justify the decision that the debt was nondischargeable. Regardless of the limited testimony, we disagree. The agreement was before the court, as was the evidence of up to five children living in the mortgaged property with the respondent. Respondent's assumption of debts and her having little in the way of assets, taken with testimony of her post-dissolution bankruptcy, clearly

indicate her economic plight. Evidence also established that she had difficulty obtaining meaningful employment.

The wording of the settlement agreement, while appearing to have inconsistencies, clearly termed the payments as support for respondent and acknowledged that without the payments she would not otherwise be able to support herself and the children. The intent of the parties appears clear, and the facts justify treating the payments as spousal support—thus nondischargeable in bankruptcy.

## DISMISSAL OF DEFENDANT'S APPEAL

■ Interestingly, upon this case being submitted to the court for decision without benefit of a brief by respondent, she discovered her attorney had not appeared for her in the appellate process. This resulted in her obtaining new counsel and filing a motion to dismiss the appeal due to petitioner's apparent late filing of the notice of appeal.

The trial court record indicates as follows: On May 22, 1991, the trial judge removed the case from the advisement calendar and decided the $30,000 was not dischargeable by bankruptcy. The trial court made a docket entry that ended with the following statement: "Counsel for movant to prepare written order. Clerk to notify counsel of record of this entry." Petitioner's motion to reconsider is file marked June 28, 1991. The trial court's written order shows that it was signed on July 3, 1991, and filed the same day. The docket indicates the motion to reconsider was denied August 12, 1991, but notice to counsel of the decision was to be given by the clerk. The record does not indicate when the clerk gave that notice.

Notice of appeal was filed on September 26, 1991. It appears the motion to reconsider was a nullity because it was filed before the written judgment was signed and filed. The motion being a nullity, then, did not extend the time for filing of the notice of appeal. Supreme Court Rule 303 (134 Ill. 2d R. 303) requires the notice to be filed with the clerk of the circuit court within 30 days after entry of the appealed-from final judgment or, if a timely motion directed against the judgment is filed, within 30 days after the entry of the order disposing of the last pending motion. A similar set of circumstances required the dismissal of the appeal in *Archer Daniels Midland Co. v. Barth* (1984), 103 Ill. 2d 536, 470 N.E.2d 290. We find that case controlling and determine the appeal must be dismissed.

Appeal dismissed.

McCULLOUGH and COOK, JJ., concur.