[Cite as *Horvath v. Horvath*, 2010-Ohio-316.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### UNION COUNTY

SUZANNE HORVATH,

    PLAINTIFF-APPELLANT,
    CROSS-APPELLEE,
                              CASE NO.  14-09-22

    v.

JEFFREY LOUIS HORVATH,
                              **O P I N I O N**

    DEFENDANT-APPELLEE,
    CROSS-APPELLANT.

Appeal from Union County Common Pleas Court
Domestic Relations Division
Trial Court No. 08-DR-0011

**Judgment Affirmed**

Date of Decision:   February 1, 2010

APPEARANCES:

    *Douglas B. Dougherty*  for Appellee/Cross-Appellant

    *Lianne Sefcovic*  for Appellant/Cross-Appellee

**SHAW, J.**

{¶1} Plaintiff-Appellant/Cross-Appellee Suzanne Horvath ("Suzanne") appeals the June 5, 2009 Judgment Entry of the Union County Court of Common Pleas, Domestic Relations Division, granting a divorce between Suzanne and Defendant-Appellee/Cross-Appellant Jeffrey Louis Horvath ("Jeffrey") specifying the division of marital property and apportioning the marital debt between the parties.

{¶2} Suzanne and Jeffrey married on July 4, 1998 in Columbus, Ohio. The couple resided in Plain City, Ohio for the duration of their marriage. No children were born from their union. On January 15, 2008, Suzanne filed a complaint for divorce citing incompatibility as the grounds for the petition. Jeffery filed a timely answer and the case proceeded to trial. The parties separated on January 26, 2008.

{¶3} On February 15, 2008, Jeffrey filed a motion for temporary orders requesting the court to order Suzanne to contribute to the mortgage payment on the marital residence and other monthly expenses. During the course of their almost ten-year marriage, the couple accumulated a significant amount of indebtedness, including approximately $74,000 in credit card debt. On March 4, 2008, the court issued temporary orders taking effect on February 26, 2008, that apportioned the mortgage payment according to each party's contribution to the household income. Suzanne was ordered to pay 39% of the $1,332 monthly

mortgage payment and Jeffrey was ordered to pay the remaining 61%. Jeffrey continued to live in the marital residence and was ordered to be responsible for the monthly utility bills. Jeffery also expressed an interest in retaining the home after the completion of the divorce. The court ordered him to bring a letter to the pre-trial hearing from a financial institution demonstrating its approval to refinance the house in his name.

**{¶4}** With regard to the monthly credit card payments, the court ordered each party to pay the minimum monthly payments on the accounts held in their respective names. In addition, the court also ordered Suzanne to pay 50% of monthly payments owed on the two credit card accounts held jointly by the parties. Suzanne's monthly payment on these debts totaled $288. Despite the court order, Suzanne failed to make her share of these payments. As a result, Jeffrey continued to pay both parties' portions of the debts.

**{¶5}** On July 8, 2008, the court stayed the divorce proceedings due to Suzanne's filing of a Chapter 7 Bankruptcy petition. In her voluntary petition for bankruptcy, Suzanne listed Jeffrey as an unsecured creditor with a disputed non-priority claim. Jeffrey did not enter an appearance during the bankruptcy proceedings. Due to the automatic stay effectuated by the bankruptcy proceedings, the divorce case remained on an inactive status until Suzanne's discharge in bankruptcy which was granted on September 30, 2008. As of that

date, the divorce case again became active and was set to be heard by the Magistrate.

{¶6} In preparation for trial, the parties submitted a list of joint stipulations. The parties agreed to the disposition of certain marital and separately owned property. However, they stipulated that the trial court would determine the division and allocation of the following assets and liabilities: the marital residence, the parties' respective 401K savings plans and a loan taken against one of the plans, Jeffrey's pension, an existing loan on an all terrain vehicle ("ATV"), and eight credit card accounts with a total balance of $35,572. Six of these accounts were held in Jeffrey's name and the remaining two accounts were jointly held. Jeffery also filed a motion for contempt requesting the court to order Suzanne to show cause for her failure to comply with the temporary orders which required her to make payments on the mortgage and joint credit card accounts.

{¶7} The final hearing concluded on December 30, 2008, where the contempt motion was also heard. The Magistrate issued a decision on January 5, 2009, granting Suzanne's petition for divorce and dividing the marital property. The decision also denied Jeffrey's motion for contempt based on Suzanne's discharge in bankruptcy. Specifically, the Magistrate found that Suzanne's discharge in bankruptcy precluded the state court from allocating any of the marital debt to Suzanne because Jeffrey was named as a creditor in Suzanne's bankruptcy petition and he took no action to seek protection in that proceeding.

-4-

As a result, the Magistrate found that it was not only bound by the specific bankruptcy discharge order but also, had no authority to apportion to Suzanne any of the remaining marital debts not specifically addressed in the bankruptcy order, or to enforce the state court's temporary orders. The trial court subsequently adopted the Magistrate's decision.

{¶8} Jeffrey filed timely objections to the Magistrate's decision citing, among other things, the Magistrate's failure to find Suzanne in contempt for not complying with the court's temporary orders and objecting to the Magistrate's division of the parties' property and debt. In response, the trial court ordered each party to submit their respective proposed findings of facts and conclusions of law.

{¶9} On May 13, 2009, the trial court sustained Jeffrey's objections. Specifically, the trial court held that because Suzanne submitted to the joint stipulations—which directed the trial court to divide the marital debts held jointly by the parties and/or held solely in Jeffrey's name—she waived her right to assert her bankruptcy as a defense. The court proceeded to divide the marital property and allocated one half of the debt held in Jeffrey's name to Suzanne which totaled $13,554. However, the court held Jeffrey solely responsible for the two jointly held credit card accounts. In addition, the court also found Suzanne in contempt of the court's temporary orders and held her responsible for $5,492.46, the amount Jeffrey asserted that she failed to pay under that order. The court also awarded the marital residence to Jeffrey.

{¶10} On May 20, 2009, Jeffrey filed a motion for reconsideration requesting the court to recalculate the division of the marital debt and assets. Specifically, Jeffrey contended that the trial court should have equally divided the jointly held credit card debt instead of assigning him sole responsibility for the entire balance. With regard to the marital residence, the parties stipulated that the house was valued at $145,000 and that it was encumbered with a $163,008 mortgage held jointly by the parties. Jeffrey claimed that the court should have credited him with half the negative equity in the marital residence offsetting the final amount the court ordered him to pay Suzanne.

{¶11} On June 5, 2009, the trial court denied Jeffrey's motion for reconsideration. As the grounds for denial, the court stated that the parties stipulated to the value of the house and that because Jeffery was reimbursed $5,492.46 for certain mortgage obligations related to the house, it would be inequitable and unjust to equally divide these debts between the parties. The trial court then entered the final divorce decree incorporating the property and debt division listed above.

{¶12} Suzanne filed an appeal to this Court asserting one assignment of error.

### SUZANNE'S ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED BY EQUALLY DIVIDING THE PARTIES' MARITAL DEBT WHEN MS. HORVATH RECEIVED A DISCHARGE IN BANKRUPTCY FOR THE**

**OUTSTANDING MARITAL DEBT OWED TO MR. HORVATH AND WHEN SHE DID NOT VALIDLY WAIVE HER BANKRUPTCY DISCHARGE RELATING TO THOSE DEBTS.**

**{¶13}** Additionally, Jeffrey filed a cross-appeal asserting one assignment of error.

## JEFFREY'S ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED WHEN IT FAILED TO EQUITABLY DISTRIBUTE THE PARTIES' PROPERTY AND DEBT.**

*Suzanne's Assignment of Error*

**{¶14}** In her sole assignment of error, Suzanne maintains that the trial court did not have the authority to apportion to her the marital debt held in Jeffrey's name. Specifically, Suzanne argues that her discharge in bankruptcy absolved her of the responsibility to pay any of the marital debt accumulated over the ten-year marriage. Initially, we note that the credit card debt titled in Suzanne's name alone is not in dispute. Each of these debts was listed in Suzanne's bankruptcy petition. However, the crux of the parties' dispute arises from the trial court's allocation of half of the credit card debt held in Jeffrey's name to Suzanne in the divorce decree.

**{¶15}** The filing of Suzanne's petition for bankruptcy initiated an automatic stay in the divorce proceedings until the bankruptcy court resolved the action for discharge. Once the trial court received notice that Suzanne's petition

had been ruled upon by the bankruptcy court, it could then proceed with the divorce action. At trial for the divorce, Suzanne submitted her bankruptcy petition as an exhibit. She listed Jeffrey as a creditor in the petition. In describing Jeffrey's claim she simply stated, "potential disputed claim of estranged spouse" and listed the amount of the claim as "unknown." Suzanne argues that the action of listing Jeffrey as a potential creditor in her bankruptcy petition—regardless of any claim actually materializing during the pendency of the bankruptcy or thereafter—deprived the state trial court of jurisdiction to apportion any of the marital debt to her in the subsequent divorce action.

{¶16} In other words, Suzanne asserts that when she filed for bankruptcy and listed Jeffery as a possible creditor, any matter relating to the division of marital debt that *could have been* raised by Jeffery in the divorce proceeding could thereafter only be litigated in the bankruptcy proceedings and not in the state domestic relations court—whether Jeffery actually raised a claim in the bankruptcy or not. Based on this belief, Suzanne argues that once she achieved a discharge in bankruptcy, the state trial court had no further authority to apportion any remaining debts to her—whether these debts were specifically noted in her bankruptcy petition and discharge or not.[1] As a result, Suzanne argues that the

---

[1] The record contains Suzanne's Voluntary Petition for Bankruptcy which was introduced as an exhibit at the divorce trial and a general notice entitled "Discharge of Debtor" ordered by the Bankruptcy Court which was filed with the trial court. There is no evidence indicating the specific debts discharged.

state trial court had no authority to hold her responsible for half of the debt in Jeffery's name.

{¶17} Adopting Suzanne's argument would effectively allow any party in a pending state divorce case to file a bankruptcy petition listing one debt and naming the spouse as a potential creditor and thereby permanently deprive the state court of any further authority to apportion marital debt between the parties—not only for those debts actually listed in the bankruptcy—but as to any debts that *could have been* listed.

{¶18} We are not persuaded that Suzanne's argument is consistent with basic principles of concurrent jurisdiction between the state and federal judicial systems in domestic relations matters. See *Barnett v Barnett* (1984), 9 Ohio St.3d 47, 49, 458 N.E.2d 834. Nor is Suzanne's argument consistent with the "domestic relations exception" to federal jurisdiction which recognizes that state courts have exclusive jurisdiction in matters involving the issuance of a divorce, alimony, or child support. See *In Re: McMinis* (Bkrtcy.N.D.Ohio 2008), No. 07-32411; see also *Ankenbrant v. Richards* (1992), 504 U.S. 689, 704.

{¶19} In domestic relations matters, it has been established that state courts have concurrent jurisdiction with the bankruptcy courts in determining the allocation of specific obligations that arise from divorce actions. *Barnett, supra*. In particular, other appellate districts have stated that the nature of concurrent jurisdiction permits a state court to determine the dischargeability of a marital

obligation despite the fact that the issue of dischargeability of that debt was not raised in the bankruptcy. See *Loveday v. Loveday*, 7th Dist. No. 02 BA 13, 2003-Ohio-1431 ¶18 (stating "that when [the] dischargeability of a marital debt is not raised in bankruptcy court, then it is an issue which may be ruled on by a court with concurrent jurisdiction after the discharge in bankruptcy."); see also *Markley v. Markley*, 9th Dist. No. 07CA0085, 2008-Ohio-3208 ¶20 (reiterating that the concurrent jurisdiction allows a state court to rule on the issue of a marital debt after a discharge in bankruptcy).

{¶20} In the case before us, the record does not convincingly support Suzanne's assertion that bankruptcy relieved her of any responsibility for the debts held in Jeffrey's name. In her bankruptcy petition, Suzanne listed all the credit card accounts held in her name specifying the account numbers and the outstanding balances. However, noticeably absent from the petition is any mention of the two accounts held jointly by the parties and the six credit card accounts held in Jeffrey's name.

{¶21} At the divorce proceedings, the parties' also submitted, as a joint exhibit, a spreadsheet detailing each party's assets and liabilities which were held both separately and jointly. The joint exhibit provided in pertinent part.

| Credit Cards | Title Held | Exhibit | Estimated Value | Distribution of Marital Property |
|---|---|---|---|---|
| Lazarus-Macy (5350) | Joint | Statement | 1,251 | To be decided by court |
| Wells Fargo (1926) | Joint | Statement | 7,213 | To be decided by court |
| American Express (1001) | Wife | Bankrupt | 0 | |

| | | | | |
|---|---|---|---|---|
| Citi (6300) | Wife | Bankrupt | 0 | |
| Care Credit (0846) | Wife | Bankrupt | 0 | |
| FIA Card Ser M&T (6980) | Wife | Bankrupt | 0 | |
| Discover (4127) | Wife | Bankrupt | 0 | |
| GE Capitol (Anderson's) (6745) | Wife | Bankrupt | 0 | |
| Lazarus-Macy (5060) | Wife | Bankrupt | 0 | |
| Lowe's (9024) | Wife | Bankrupt | 0 | |
| JC Penney (9929) | Wife | Bankrupt | 0 | |
| Providian/Washington Mutual (8072) | Wife | Bankrupt | 0 | |
| Sam's Club | Wife | Bankrupt | 0 | |
| Talbots (4155) | Wife | Bankrupt | 0 | |
| Victoria Secrets (6573) | Wife | Bankrupt | 0 | |
| US Bank (World Perks) (6801) | | | | |
| | | | | |
| Capital One (7957) | Husband | Statement | 4,977 | To be decided by court |
| Circuit City (Chase) (8646) | Husband | Statement | 2,473 | To be decided by court |
| Discover (Closed)(7605) | Husband | Statement | 2,170 | To be decided by court |
| Discover (7957)(8738)(6039) | Husband | Statement | 5,119 | To be decided by court |
| *** | | | | |
| Citi (0375) | Husband | Statement | 7,642 | To be decided by court |
| Chase Universal (1089)(1615) | Husband | Statement | 4,727 | To be decided by court |

**{¶27}** Based on this exhibit, the credit card accounts held in Suzanne's name were accounted for in bankruptcy, however, the credit card accounts held jointly and in Jeffrey's name appeared to be unaffected by the bankruptcy discharge. The only evidence Suzanne offered at trial to the contrary regarding these debts, was the opinion testimony of the attorney who represented her in the bankruptcy proceedings. However, we do not find this testimony to be conclusive in demonstrating whether Suzanne remained responsible for the debts held jointly and in Jeffrey's name after her discharge in bankruptcy.

**{¶28}** In addition to the exhibits previously mentioned, we note that the parties submitted a list of joint stipulations specifically directing the trial court to

allocate certain debts between the parties including the credit cards held jointly and in Jeffrey's name. The "Parties' Joint Stipulations for Trial" signed by both parties and their counsel states, in pertinent part:

> **10. The parties agree to the division of the assets and debts as outlined in the attached exhibit one *with the noted exception that the court shall determine the division of the following assets and debts*: \* \* \* (marital residence), Honda 401K Savings Plan, Honda Pension, Cleveland Clinic 401K, GMAC Mortgage, Honda Loan on ATV, Lazarus-Macy [sic], Wells Fargo, Capital One, Circuit City, Discover, Citi, Chase Universal and Honda 401K loan.**

*Parties' Joint Stipulation*, at 2 (amounts of debts omitted). (Emphasis added). In sum, based on the evidence submitted at the divorce proceedings, it appears that both parties specifically acknowledged the authority of the trial court to allocate these debts between them. Therefore, whether it constitutes a viable waiver or not, Suzanne's assertion on appeal that the trial court did not have jurisdiction to divide these debts, at the very least, is completely inconsistent with her own stipulated assessment of the trial court's authority as expressed at the divorce proceedings.

{¶29} Therefore, based upon the foregoing principles of concurrent jurisdiction shared by the trial court and the bankruptcy court in these matters— which Suzanne appears to have expressly acknowledged in the joint exhibits submitted to the trial court—we conclude that the trial court had the authority to divide the marital debts in dispute. We reiterate that there is no issue raised in this case as to the exclusive authority of the bankruptcy court with regard to the debts

in Suzanne's name which were specifically listed in the bankruptcy petition. However, Suzanne's assignment of error is overruled.

*Jeffrey's Assignment of Error*

{¶30} In asserting his sole assignment of error, Jeffrey argues that the trial court failed to equitably distribute the parties' property and debt. Specifically, Jeffrey challenges the trial court's allocation of the jointly held credit card accounts as his sole responsibility and the valuation of the marital residence in the final divorce decree. Revised Code Section 3105.171(C)(1) governs the division of marital property and provides, in part:

> **[T]he division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable.**

Initially, we note that "[a]lthough an equal division is a starting point when allocating marital property and debt, a decision need not be equal to be equitable." *Shaffer v. Shaffer*, 3d Dist. No. 11-04-22, 2005-Ohio-3884, ¶25, citing R.C. 3105.171(C)(1); *Lust v. Lust*, 3d Dist. No. 16-02-04, 2002-Ohio-3629, ¶25. Trial courts generally have broad discretion in determining the equitable distribution of property in divorce cases; and therefore, we review the overall appropriateness of the trial court's property distribution under and abuse of discretion standard. *Martin v. Martin*, 3d Dist. No. 9-03-47, 2004-Ohio-807, ¶6, citing *Lust*, 2002-Ohio-3629; *Bisker v. Bisker* (1994), 69 Ohio St.3d 608, 635 N.E.2d 308; *Martin v.*

*Martin* (1985), 18 Ohio St.3d 292, 480 N.E.2d 1112. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶31}** At the final hearing, Jeffrey requested the court to hold Suzanne in contempt for failing to comply with the court's temporary orders. Jeffrey argued that the amount of Suzanne's obligation at the time of the final hearing totaled $5,492.46. However, Jeffrey did not present any evidence regarding how he calculated this amount. The court therefore presumed that this amount represented Suzanne's share of these obligations as of the time of the final hearing. The trial court found Suzanne was obligated to pay Jeffrey for her share of these debts and ordered Suzanne to reimburse Jeffrey. Therefore, $5,492.46 was deducted from Suzanne's share of the marital assets.

**{¶32}** In the divorce decree, the trial court ordered Jeffrey solely responsible for the two credit card accounts which were held jointly in both parties name. The total outstanding balance at the time of the final hearing was $8,464. The trial court also awarded the marital residence to Jeffrey and noted that the parties retained zero equity in the value of house. As part of the submitted joint stipulation, the parties stated that the actual value of the marital residence was $145,000 and that the parties jointly held a $163,008 mortgage on the property.

Jeffrey maintains that the trial court should have attributed a negative equity of $18,008 to the house instead of stating the house had zero equity.

**{¶33}** Our review of the record reveals that the temporary orders were executed prior to Suzanne filing of her bankruptcy petition. In her petition, Suzanne listed the marital residence as the only joint debt. Jeffrey continued to reside in the marital home throughout the pendency of the divorce proceedings and was ultimately awarded the house. In assigning responsibility for the joint credit card accounts, the trial court found it "would be inequitable and unjust to assign any portion of [these debts to Suzanne] since the award of $5492.46 was applied to these debts during the pendency of this case." (Divorce Decree, Conclusion of Law N(c)). Given that the total balance remaining on the joint credit card accounts was $8,464 and in light of the fact that Jeffrey retained the use and enjoyment of the marital residence for the duration of the divorce proceedings, we cannot find that the trial court abused its discretion. Jeffrey's assignment of error is therefore overruled.

**{¶34}** Based on the foregoing, the June, 5 2009 Judgment of the Union County Court of Common Pleas, Domestic Relations Division, is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**