[Cite as *Phillips v. Phillips*, 2013-Ohio-3538.]

COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| MICHAEL J. PHILLIPS | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellant | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 12CA0020 |
| CHRISTINE A. PHILLIPS | : |  |
|  | : |  |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil appeal from the Morrow County Court
                             of Common Pleas, Domestic Relations
                             Division, Case No. 2009-DR-0522

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      August 12, 2013


APPEARANCES:

For Plaintiff-Appellant              For Defendant-Appellee

KEVIN COLLINS                        ANDREA YAGODA
495 South State Street               2000 Henderson Road, Ste 250
Marion, OH 43302                     Columbus, OH  43220

*Gwin, P.J.*

{¶1} Appellant appeals the November 5, 2012 journal entry of the Morrow County Court of Common Pleas, Domestic Relations Division, overruling appellant's objections and affirming the magistrate's decision.

### Facts & Procedural History

{¶2} Appellant Michael Phillips ("Husband") and appellee Christine Phillips ("Wife") were married on December 31, 1999. The couple has no children together. The parties separated on August 21, 2009. Husband filed his complaint for divorce on November 6, 2009. After Wife filed an answer and counterclaim, temporary orders were issued by the trial court on February 2, 2010. A pre-trial hearing was scheduled for March 26, 2010, but was continued at the request of Husband to May 3, 2010. After a second pre-trial on June 21, 2010, the trial court scheduled the case for trial on September 10, 2010, but this date was continued upon motion of Wife to September 24, 2010. Husband then filed a second request to continue to finalize documentation and then requested two more continuances due to medical reasons. A trial before the magistrate was held on September 30, 2011 and December 7, 2011. Husband filed objections to the magistrate's decision and the magistrate's additional findings of fact and conclusions of law. On November 5, 2012, the trial court overruled Husband's objections and adopted the decision of the magistrate.

{¶3} At the time of the first portion of the trial, Husband was 51 years old. He has a bachelor's degree in computer information systems and has served in the National Guard and Army National Guard. Husband last worked in June of 2009. Husband stopped working because he "had been going downhill." Husband was

diagnosed in 2006 with a neuromuscular condition known as inclusion body myositis ("IBM"). In 2010, Husband received disability through an insurance policy at $29,299 gross per year, social security disability benefits of $25,788 gross per year, and a small dividend check in the amount of $191.00 per year. Of that amount, only $11,622 was taxable. Husband has a 401(k) through his former employer Chase Bank valued at $56,678.52 and a Chase retirement plan with a balance of $16,435.58. The court awarded these accounts to Husband.

{¶4} At the time of the trial, Wife was 40 years old. She has a bachelor's degree in human resources and holds a practical nursing license. In 2008, Wife retired from active National Guard service after twenty-one (21) years. She is currently employed at the Adjunct General's Department for the National Guard as a civilian federal employee with a gross salary of $64,584.00 per year. All of this income is taxable. Husband testified he feels Wife's earning potential is high, because, when Wife first started the job in 2008, Wife was excited about the prospect of getting her boss's position. Wife testified it is highly unlikely she will get her boss's job because there are no G-12 positions available for her to advance to and she is not permitted to jump from a G-11 position to a G-13 position. Husband believes there may be future raises for Wife and disputes Wife's contention that she cannot skip grades in the federal system.

{¶5} Wife has a Thrift Savings Plan ("TSP") retirement account with a balance of $108,475. Wife testified that, at the time she entered the marriage, the account had a balance of $28,134. Husband stipulated this portion of the account was premarital. Wife opined that her premarital portion increased to $56,613 using the industry standard 6% yearly increase. The trial court found the marital portion of the TSP to be

$80,341.39 and awarded this account to Wife. Wife also has a Federal Employees Retirement Account ("FERS") pension. The trial court found the marital portion of the FERS account to be $50,265.70 and ordered that amount to be divided equally between the parties. Wife has a National Guard Pension. The trial court found the marital portion to be $26,612.44 and divided the account equally between the parties.

{¶6} The parties own the home at 1690 CR 17, Marengo, Ohio. The parties purchased the home for $289,000 in September of 2005. The mortgage balance is $267,000. Wife testified the house is worth $250,000 and referenced a July 2010 appraisal valuing the property at $250,000. Kenneth Osbun ("Osbun"), a licensed real estate appraiser, appraised the home at $195,000 in 2010 and at $205,000 in 2011. Osbun testified the increase in the home valuation from 2010 to 2011 was due to there being less houses on the market. Husband sought to keep the marital residence. The magistrate valued the home at $205,000 and awarded the martial home to Husband, but did not provide Husband with an offset for any negative equity. Further, the magistrate awarded Husband $7,885.00 of the $9,695.00 of the household goods, furnishings, and other personal property in the marital home. The magistrate awarded Wife a list of specific items such as the dining room table and cherry bed frame. After Husband objected to the magistrate's order on the specific items, the trial court found the parties were working on settling the issue. The trial court ordered the parties to mediation and, if mediation was unsuccessful, ordered all marital property to be sold at public auction and the proceeds equally divided between the parties.

{¶7} The parties had a credit union account when they separated. The balance of the account was $26,846.46 and included an inheritance of $19,217.90 from Wife's

grandmother. Husband testified there were marital funds of $7,700 in the credit union account at the time of separation and that Wife left the account with $1,000 when she left the martial home. Wife agrees she left Husband with $1,000 in the credit union account and testified that the parties were depositing money into this account to pay off a debt incurred when she took early leave from the military, a decision made by both parties together during their marriage. The total debt was $8,000 and, at the time of the trial, was down to $3,600 as Wife's tax return was garnished to pay this debt. The magistrate found the funds in the account, not including Wife's inheritance funds, were for the purpose of paying off the debt to the National Guard and found the debt owed counterbalanced any marital monies in the account. The account was awarded to Wife.

{¶8} Husband testified he had a $35,000 student loan which was deferred. Husband further testified he owed his parents $29,500, as evidenced by three promissory notes dated July 30, 2010 ($8,500), July 20, 2011 ($12,000) and March 18, 2010 ($9,000). Husband was unsure specifically which debts he paid with the loans from his parents, but stated he used the money to pay for stem cell treatments, the mortgage and "everything he was getting behind on." Husband testified he went to Mexico for stem cell treatments in August of 2010 and December of 2010.

{¶9} Husband requested spousal support because he is disabled and "going downhill fast" and because his monthly expenses are higher than his monthly income. Wife testified she did not have the ability to pay spousal support because her monthly expenses are higher than her monthly income. Wife agreed Husband is disabled, but thinks he could continue to do computer work at least part-time as he did when they were married. The trial court found that the magistrate considered all the appropriate

factors in denying Husband spousal support. The trial court noted that Husband was awarded the martial home with its unique modifications to accommodate his needs, was awarded a significant portion of the tangible personal property, and failed to provide satisfactory evidence at the hearing that his earning capabilities have been completely eliminated.

{¶10} Husband appeals the November 5, 2012 judgment entry of the trial court and assigns the following errors:

{¶11} "I. THE TRIAL COURT VIOLATED R.C. 3105.171 AND ERRED TO MICHAEL'S PREJUDICE BY DIVIDING THE MARITAL ESTATE UNEQUALLY AND INEQUITABLY.

{¶12} "II. THE TRIAL COURT ERRED TO MICHAEL'S PREJUDICE BY DETERMINING THE DEBT OWED TO HIS PARENTS WAS NOT PROVEN.

{¶13} "III. THE TRIAL COURT ERRED TO MICHAEL'S PREJUDICE BY ORDERING ALL MARITAL PROPERTY SOLD AT AUCTION IF THE PARTIES CANNOT AGREE ON THE DIVISION OF THE REMAINING HOUSEHOLD GOODS AND FURNISHINGS.

{¶14} "IV. THE TRIAL COURT VIOLATED R.C. 3105.18 AND ERRED TO MICHAEL'S PREJUDICE BY FAILING TO AWARD HIM SPOUSAL SUPPORT."

I.

{¶15} Husband argues the trial court erred by dividing the marital estate unequally and inequitably. We disagree.

{¶16} The trial court is vested with broad discretion in determining the appropriate scope of these property awards. Although its discretion is not unlimited, it

has authority to do what is equitable." *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 541 N.E.2d 597 (1989). A trial court's decision allocating marital property and debt will not be reversed absent an abuse of discretion. *Id.* An abuse of discretion is more than a mere error; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). An unequal division does not in and of itself constitute an abuse of discretion. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988). Further, a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978).

{¶17} R.C. 3105.171(B) requires equitable distribution of marital and separate property. R.C. 3105.171(C) mandates an equal division of marital property, unless such would be inequitable under the circumstances. In dividing marital assets, and in deciding whether to order an unequal award, a trial court must consider all relevant factors, including those listed in R.C. 3105.171(F). On appellate review, the trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division of marital assets. *Briganti v. Briganti*, 9 Ohio St.3d 220, 222, 459 N.E.2d 896 (1984).

*Negative Equity in Marital Home*

{¶18} Husband argues the trial court erred in failing to assign him the negative equity in the marital home. We find the trial court did not abuse its discretion in not assigning negative equity in the marital home to Husband in the property division. The trial court reasoned there was a "strong possibility that the real estate market will shortly

rebound, resulting in significant, positive equity in the marital home awarded to him." In reviewing the record, we find the trial court based this decision on competent and credible evidence. Osbun, a licensed real estate appraiser, first appraised the marital home in 2010 at $195,000. When he revisited his appraisal closer to the time of the trial in 2011, he appraised the marital home at $205,000, noting home prices rose from 2010 to 2011 due to less houses being on the market.

{¶19} The magistrate also noted that Husband is going to get the benefit of a furnished home retrofitted for his medical needs and Wife has to walk away from the property. While the magistrate found it difficult to assign an actual value on the modifications in the marital home, the trial court noted these modifications to accommodate Husband's needs should be taken into account when making an equitable division of marital property. Further, Husband retained the use of the marital residence for the duration of the divorce proceedings and during the time in which he requested multiple continuances of the trial date. See *Horvath v. Horvath*, 3d Dist. No. 14-09-22, 2010-Ohio-316; *Collins v. Collins*, 3d Dist. No. 9-11-32, 2012-Ohio-749. Accordingly, the trial court did not abuse its discretion in failing to assign the negative equity in the marital home to Husband.

*School Loan*

{¶20} Husband states the trial court erred by not clearly distributing his student loan interest in the equitable distribution of marital assets and liabilities. We disagree. In her "Order as to Plaintiff's [Husband's] Request for Additional Findings of Facts and Conclusions of Law," the magistrate specifically found that, "Plaintiff [Husband] has marital debts that he is ordered to pay * * * $35,350.68 to the U.S. Department of

Education (this debt is permanently deferred, but the deferment caused a $10,000 tax liability)." The trial court incorporated the magistrate's order on additional findings of facts and conclusions of law into its entry adopting and approving the magistrate's decision and found the marital and non-martial assets and liabilities were fairly and equitably distributed by the magistrate. We find no abuse of discretion.

*Other Considerations*

{¶21} Husband argues the trial court erred in not properly taking into consideration his shorter life expectancy due to his IBM condition and also erred in distributing Husband significant assets that are unavailable until Wife retires.

{¶22} The largest items on Husband's proposed division of assets and liabilities are the negative equity in the marital home and school loan interest, which we reviewed above. Taking into account the disposition of those items as decided above, we find the trial court did not abuse its discretion in its distribution of assets and liabilities. The magistrate indicated that while Wife was awarded approximately $7,000.00 more in the TSP than Husband was awarded in his Chase retirement accounts, it was equitable in light of the substantial premarital balance in the TSP and the probability it had grown in value. The trial court also found this difference alone did not make the total division inequitable. Further, the trial court also considered the fact that the parties deemed their marital relationship effectively terminated in August of 2009, the date of their separation. Despite this fact, Husband received the benefit of additional contributions made by Wife to her TSP while the divorce was pending until September of 2011.

{¶23} Husband posits he should receive the full marital portion of Wife's TSP in lieu of his portion of her pension accounts because he has a shorter life span. The trial

court found Husband's "lifestyle, although impacted by his disability does not necessarily lead to a shortened life." Husband submitted two letters during the trial in support of his claim. The letters are dated within two months of each other. One letter states that IBM is a slowly progressive muscle disability and that Husband *may* have a shorter than average life due to immobility. The second letter states that Husband's life expectancy is normal. Husband testified that, because of his condition, he could die in his sleep. The trier of fact is vested with the authority to weigh the evidence and assess the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of syllabus (1967). Accordingly, the trial court did not abuse its discretion in awarding Husband assets in Wife's pension accounts rather than funds from her TSP account.

**{¶24}** Based upon our review of the record, we find both the magistrate and the trial court took into consideration all relevant factors in their division of marital assets and debts, including those factors listed in R.C. 3105.171(F). Considering the totality of the circumstances, we find the trial court did not abuse its discretion in its distribution of assets and liabilities. Husband's first assignment of error is overruled.

II.

**{¶25}** Husband next argues the trial court erred by determining the alleged debt owed to his parents was not proven. We disagree. The magistrate found Husband failed to sufficiently establish the debt to his parents. At the hearing, Husband testified that Exhibit 32 was "the first loan I believe I received from them for $8,500." Husband did not identify the other items in Exhibit 32, purporting to be promissory notes evidencing loans from his parents to Husband, but stated the total debt he owes to his

parents is $29,500. Husband's parents did not testify and there is no evidence that Husband's parents have pursued repayment. The trier of fact is vested with the authority to weigh the evidence and assess the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of syllabus (1967); see also *O'Brien v. O'Brien*, 5th Dist. No. 2003-CA-F12069, 2004-Ohio-5881 (finding trial court did not err by not including debt owed to appellant's mother as a marital debt); *Davis v. Davis*, 2d Dist. No. 2011-CA-71, 2012-Ohio-418 (finding trial court did not abuse its discretion in holding wife solely responsible for funds borrowed from her sister during the marriage). The trial court was free to believe all, part, or none of the testimony regarding the obligation to repay Husband's parents. We find no abuse of discretion.

{¶26} Husband further argues the trial court, in its entry adopting the magistrate's decision, erred in not treating the debt to his parents as marital debt. The trial court agreed with the magistrate that Husband failed to prove the existence of the debt to his parents. The trial court further found there was no clear explanation that the use of the funds by Husband from his parents after the separation were specifically for his medical expenses and that the magistrate's debt determination took into consideration all of the evidence presented on martial obligations prior to separation.

{¶27} Marital debt is "any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose." *Ketchum v. Ketchum*, 7th Dist. No. 2001CO60, 2003-Ohio-2559, citing Turner, Equitable Division of Property (2d Ed. 1994). "Trial court decisions on what is presently separate and marital property are not reversed unless there is a showing of an abuse of discretion." *Vonderhaar-Ketron v.*

*Ketron*, 5th Dist. No. 10CA22, 2010-Ohio-6593. Although Ohio's divorce statutes do not generally articulate debt as an element of marital and separate property, the rules concerning marital assets are usually applied to marital and separate debt as well. *Id.*

**{¶28}** The parties both agree they separated on August 21, 2009. The promissory notes alleged to evidence Husband's debt to his parents are dated July 30, 2010 ($8,500), July 20, 2011 ($12,000) and March 18, 2010 ($9,000) and thus all the alleged debt to Husband's parents was accrued after the parties separated.

**{¶29}** The record reveals the parties lived physically and financially separate and apart for more than two years prior to the decree of divorce. See *Currey v. Currey*, 5th Dist. No. 09CA13, 2010-Ohio-2936. There is no evidence that the alleged debt to Husband's parents provided any benefit to Wife or was for a valid marital purpose. Husband was unsure specifically which debts he paid with the loans from his parents, and thinks he used the money to pay for his stem cell treatments, the mortgage and "everything he was getting behind on." There was no testimony as to how much was used for the mortgage or his medical treatment and, as noted by the trial court, Husband lumps together a number of expenses he feels should have been paid for by Wife after the date of separation. We agree with the trial court that Wife should not have to pay for his unusual stem cell treatments, procured outside the country, after the date of separation. The record further demonstrates that Husband requested multiple continuances of the trial for medical reasons and that at least one of the alleged promissory notes (July 2011) was executed after several of Husband's requests for continuance. We find the trial court did not abuse its discretion in not treating the debt

to Husband's parents as marital debt and determining the magistrate equitably divided the martial debt.

**{¶30}** Husband's second assignment of error is overruled.

III.

**{¶31}** Husband argues the trial court erred by ordering all marital property sold at auction if the parties could not agree on the division of the remaining household goods and furnishings. We disagree.

**{¶32}** After Husband objected to the award of certain specific items of martial property to Wife, the trial court noted it was "advised the parties are both in good faith working on a settlement of this issue." The trial court ordered the parties to mediation and ordered all marital property to be sold at public auction within sixty (60) days of a failed mediation and the net proceeds to be divided equally between the parties.

**{¶33}** Husband fails to cite any legal authority or statute in support of his argument as required by App.R. 16 (A)(7). Further, R.C. 3105.171(J)(2) provides that:

> The court may issue any orders under this section which it deems equitable, including, but not limited to, either of the following types of orders:
>
> > (2) an order requiring the sale of or encumbrancing of any real or personal property, with the proceeds from the sale and the funds from any loan secured by the encumbrance to be applied as determined by the court.

See also *Bunch v. Bunch*, 5th Dist. No. 2003CA00190, 2003-Ohio-6175 (affirming order of trial court requiring the tools of the parties be sold at auction and the proceeds divided equally between the parties.)

**{¶34}** Accordingly, we find the trial court did not abuse its discretion in ordering the items sold at auction if mediation failed. Husband's third assignment of error is overruled.

IV.

**{¶35}** Husband finally argues the trial court erred in failing to award him spousal support. We review the trial court's decision relative to spousal support under an abuse of discretion standard. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). To find an abuse of discretion, this court must determine that the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Further, a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978).

**{¶36}** R.C. 3105.18(C)(1) sets forth the factors a trial court must consider in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support. These factors include: (a) income of the parties, from all sources * * *; (b) the relative earning abilities of the parties; (c) the ages and the physical, mental, and emotional conditions of the parties; (d) the retirement benefits of the parties; (e) the duration of the marriage; (f) the extent to which it would be inappropriate for a party, because that party will be

custodian of a minor child of the marriage, to seek employment outside the home; (g) the standard of living of the parties established during the marriage; (h) the relative extent of education of the parties; (i) the relative assets and liabilities of the parties; (j) the contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) the time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience * * *; (l) the tax consequences, for each party, of an award of spousal support; (m) the lost income production capacity of either party that resulted from that party's marital responsibilities; and (n) any other factor that the court expressly finds to be relevant and equitable.

{¶37} In her judgment entry, the magistrate completed a thorough analysis of all the above-listed, relevant factors.  The trial court adopted the findings of fact and decision of the magistrate relative to spousal support and further noted that Husband had been awarded the marital home with unique modifications, was awarded a significant portion of the tangible personal property, and did not demonstrate his capabilities for earning income have been completely eliminated.

{¶38} In this case, we find no abuse of discretion in the trial court's decision regarding spousal support and our review of the record reveals the presence of credible evidence supporting both the magistrate and the trial court's determinations.  Both parties agree the parties' income at the time of the hearing were comparable.  The parties were married in December of 1999, separated in August of 2009, and divorced at the end of 2011.  Both have college degrees, Husband's in computer information

systems and Wife's in human resources.  The trial court determined Husband can probably supplement his income and Husband did not present evidence that his capabilities for earning income have been completely eliminate.  The court recognized that while there are limitations on Husband's earning capabilities, he is not without any earning capabilities.  Upon review of the record, we find there is credible evidence supporting the trial court's determination regarding Husband's earning capacities.  Further, while Husband posits that Wife may, in the future, earn more, such is speculation and Wife testified it would be highly unlikely she could get her boss's job.  Ultimately, the parties each bear their share of financial advantages and disadvantages.  While Husband has limitations on his earning capacity, he was awarded the marital home with unique modifications and was awarded a significant amount of the marital property.  Both parties have retirement accounts.  Husband was awarded his retirement account and half of the marital portion of Wife's FERS and National Guard pensions.  Wife was awarded her TSP, approximately 25% of which was separate property, and half of her FERS and National Guard pensions.  Both parties have credit card debts and, on a monthly basis, each of their expenditures exceed their income.  Accordingly, Husband's fourth assignment of error is overruled.

{¶39} Based on the foregoing, the November 5, 2012 judgment entry of the Morrow County Common Pleas Court, Domestic Relations Division, is affirmed.

By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. PATRICIA A. DELANEY

_____

HON. CRAIG R. BALDWIN

WSG:clw 0723

IN THE COURT OF APPEALS FOR MORROW COUNTY, OHIO

FIFTH APPELLATE DISTRICT

MICHAEL J. PHILLIPS     :
            :
   Plaintiff-Appellant   :
            :
            :
-vs-          :    JUDGMENT ENTRY
            :
CHRISTINE A. PHILLIPS    :
            :
            :
   Defendant-Appellee  :    CASE NO. 12CA0020

For the reasons stated in our accompanying Memorandum-Opinion, the November 5, 2012 judgment entry of the Morrow County Common Pleas Court, Domestic Relations Division, is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. CRAIG R. BALDWIN