[Cite as *Doss v. Doss*, 2024-Ohio-2730.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| HOLLY M. DOSS | : | |
| | : | |
| Appellant/Cross-Appellee | : | C.A. No. 2023-CA-22 |
| | : | |
| v. | : | Trial Court Case No. 2018 DR 78 |
| | : | |
| JOSEPH H. DOSS | : | (Appeal from Common Pleas Court- |
| | : | Domestic Relations) |
| Appellee/Cross-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on July 19, 2024

. . . . . . . . . . .

JOHN H. COUSINS, Attorney for Appellant/Cross-Appellee

DALE D. COOK, Attorney for Appellee/Cross-Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Holly M. Doss appeals from the trial court's judgment entry sustaining in part a new-trial motion filed by Joseph H. Doss after issuance of the parties' divorce decree. Holly contends the trial court erred in ordering a new trial under Civ.R. 59 on her entitlement to an award of attorney fees and on Joseph's parenting time.

{¶ 2} In a cross-appeal, Joseph challenges portions of the divorce decree on which his new-trial motion was denied. He also contends the trial court erred in ordering Civ.R. 60(A) relief to increase the value of the marital estate. He claims the trial court erred in awarding Holly legal custody of their children. He argues that money he received from his father to purchase and maintain commercial real estate during the marriage was a debt and not a gift. Finally, assuming arguendo that the trial court erred in granting him a new trial on the issues of attorney fees and parenting time, Joseph asserts that the trial court's resolution of those issues in the divorce decree was against the weight of the evidence.

{¶ 3} With regard to Holly's appeal, we see no abuse of discretion in the trial court's order for a new trial on attorney-fee and parenting-time issues. Accordingly, we will affirm the trial court's entry sustaining in part Joseph's new-trial motion. As for Joseph's cross-appeal, we conclude that the trial court did not err in ordering relief under Civ.R. 60(A) to correct a clerical error. We also see no error in the divorce decree's awarding Holly legal custody of the parties' children. We also find no error in a determination that money Joseph received to purchase and maintain commercial real estate was a gift from his father. Finally, the trial court's new-trial ruling has rendered moot Joseph's arguments about the divorce decree's resolution of attorney-fee and parenting-time issues. As a result, the trial court's judgment entry and decree of divorce will be affirmed subject to the ordered partial new trial.

## I. Background

{¶ 4} The parties married in 2008 and had two children together. In April 2018, Holly filed a complaint for a divorce. At the time of her filing, the older child was nearly

eight and the younger child was six. After numerous motions, temporary orders, and other proceedings, a visiting judge heard four days of testimony before filing a divorce decree in May 2021. Among other things, the decree divided marital assets and debts, awarded Holly sole custody of the children, ordered Joseph to pay child support and spousal support, granted Joseph parenting time, and ordered him to pay $75,000 of Holly's attorney fees.

{¶ 5} Joseph moved for a new trial under Civ.R. 59, challenging several aspects of the divorce decree. After the visiting judge's appointment was withdrawn, the sitting trial court judge summarily overruled Joseph's motion on the basis that it involved matters that "are for appellate review." Joseph appealed from both the overruling of his new-trial motion and the divorce decree itself. He also challenged the trial court's sustaining of a Civ.R. 60(A) motion to correct what it characterized as a clerical error.

{¶ 6} This court reversed the trial court's judgment overruling the new-trial motion. *See Doss v. Doss*, 2d Dist. Champaign No. 2021-CA-28, 2022-Ohio-1339 ("*Doss I*"). We noted that Joseph had raised manifest-weight arguments that properly were the subject of a new-trial motion under Civ.R. 59(A)(6). We remanded the case for the trial court to address the new-trial motion on the merits. In light of our remand, we deemed Joseph's challenge to the trial court's resolution of the Civ.R. 60(A) issue not ripe for review. We reached the same conclusion with regard to his appeal from the divorce decree itself. We reasoned that he would be able to appeal again from the divorce decree if the trial court overruled his new-trial motion. *Id.* at ¶ 3.

{¶ 7} Following our remand, the trial court filed a May 8, 2023 journal entry

sustaining Joseph's new-trial motion in part and overruling it in part. The trial court found a new trial warranted on the issues of attorney fees and Joseph's parenting time. The trial court concluded that the visiting judge's resolution of these issues in the divorce decree appeared "to be arbitrary and not fully supported by the evidence." Holly appealed from the new-trial ruling, and Joseph cross-appealed from the divorce decree and from the trial court's sustaining of Holly's Civ.R. 60(A) motion to correct a clerical error.

{¶ 8} In a March 7, 2024 order, we rejected Holly's argument that the trial court had applied an erroneous legal standard to Joseph's new-trial motion. We concluded that the trial court properly had examined the record to determine whether the visiting judge's various findings were supported by the weight of the evidence. We noted that this was the standard for a new-trial motion under Civ.R. 59(A)(6). We recognized, however, that the trial court had given no explanation for its conclusions regarding the weight of the evidence. As a result, we held Holly's appeal and Joseph's cross-appeal in abeyance and remanded the case to the trial court for the limited purpose of explaining its decision to order a new trial on attorney-fee and parenting-time issues.

{¶ 9} In a March 25, 2024 journal entry, the trial court provided its reasons for ordering a new trial on the two issues. We then reactivated the case on our docket. In April and May 2024, Holly and Joseph filed supplemental appellate briefs addressing the trial court's rationale for ordering a new trial on the issues of attorney fees and parenting time.

## II. Holly's New-Trial Appeal

{¶ 10} In her original appellate brief filed before our most recent remand, Holly

argued that the trial court had applied an incorrect legal standard to Joseph's new-trial motion and had failed to provide reasons for granting a new trial. Our March 7, 2024 remand order rejected Holly's argument about the legal standard, and the trial court's March 25, 2024 journal entry now has provided the rationale for its decision. Therefore, we have no occasion to address these issues raised in Holly's original appellate brief.

{¶ 11} Following the trial court's explanation of its decision, Holly filed a supplemental appellate brief advancing two assignments of error that challenge the trial court's new-trial ruling. The first supplemental assignment of error states:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING A NEW TRIAL ON THE ISSUE OF ATTORNEY FEES WITHOUT DISPUTING [THE VISITING JUDGE'S] ANALYSIS, WITHOUT MENTIONING ANY OF THE FACTORS IN R.C. 3105.73(A), AND BY REQUIRING "INDEPENDENT TESTIMONY OR EVIDENCE AS TO THE REASONABLENESS OF THE FEES."

{¶ 12} In *Doss I*, 2d Dist. Champaign No. 2021-CA-28, 2022-Ohio-1339, we recognized that a successor judge may preside over a new-trial motion to determine whether the evidence supported a former judge's decision. *Id.* at ¶ 33, 36. "Our review of decisions on new trial motions depends on whether the issue is one of law or is a matter over which the trial court exercises discretion. On matters of law, we review de novo, and on discretionary issues, we consider whether the trial court abused its discretion." *Id.* at ¶ 31, citing *Rohde v. Farmer*, 23 Ohio St.2d 82, 83, 262 N.E.2d 685 (1970), paragraphs one and two of the syllabus. The trial court's decision to grant a new trial under Civ.R.

59(A)(6) based on the weight of the evidence involved a matter of discretion. Therefore, we will review the trial court's decision for an abuse of that discretion.

{¶ 13} An abuse of discretion implies the existence of an unreasonable, arbitrary, or unconscionable attitude. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). A decision is unreasonable if no sound reasoning process supports it. *Id.*

{¶ 14} With the foregoing standards in mind, we see no abuse of discretion in the trial court's ordering of a new trial on the attorney-fee issue. In response to our March 7, 2024 remand order, the trial court provided the following explanation for its decision:

> As for Plaintiff's request for attorney fees, the Court found that a new trial was in order for the following reasons:
>
> - The transcript states that Plaintiff's attorney fees through March 27, 2019 equated to $15,293.00;
>
> -Plaintiff's Exhibit 50 indicates that Plaintiff's attorney fees through March 27, 2019 equated to $58,942.00;
>
> -Plaintiff's August 14, 2019 Proposed Decision and Judgment Entry states Plaintiff has attorney fees in excess of $105,000.00 and requests payment of $85,000. There is no supporting documentation;

-The Court awarded Plaintiff $75,000 in attorney fees;

-There was no independent testimony or evidence as to the reasonableness of the fees.

The Court's award of $75,000 is not based on any evidence presented. It may be appropriate to award Plaintiff attorney fees, but the amount is against the manifest weight of the evidence.

March 25, 2024 Journal Entry at p. 1.

{¶ 15} The trial court's first two justifications cite a perceived contradiction in the amount of Holly's attorney fees through March 27, 2019. But there was no contradiction. During the divorce hearing, Holly identified Plaintiff's Exhibit 50 as "a true and accurate copy" of her attorney-fee billing through March 27, 2019. *See* June 11, 2019 Transcript Vol. III at 532. The trial court observed that "Exhibit 50 indicates that Plaintiff's attorney fees through March 27, 2019 equated to $58,942.00."

{¶ 16} In her hearing testimony, however, Holly agreed with counsel that Exhibit 50 reflected an attorney-fee bill of $15,293 through March 27, 2019. *Id.* This obvious misstatement could not create a contradiction because Holly's testimony referenced an exhibit that spoke for itself. Notwithstanding Holly's testimony about the exhibit, the trial court recognized that Exhibit 50 actually reflected total attorney fees of $58,942, not $15,293. Holly's error about what the exhibit showed did not change that fact.

{¶ 17} As grounds for a new trial, the trial court also cited the absence of any "supporting documentation" for Holly's $85,000 fee request and no "independent testimony or evidence" establishing the reasonableness of the visiting judge's $75,000 fee award. We note that Holly's request for $85,000 in attorney fees originated in a post-

hearing, proposed divorce decree she filed on August 14, 2019. Her proposed decree stated that her total attorney fees as of that date exceeded $105,000, and it included proposed language finding it equitable for Joseph to pay $85,000 of that amount.

{¶ 18} In its March 25, 2024 journal entry on remand, the trial court correctly noted that Holly had provided no supporting documentation for such an award. She did not provide the trial court with an updated billing statement, affidavit, or any other evidence establishing that her total fees were $105,000. The only record evidence regarding Holly's fees was her June 11, 2019 testimony referencing Exhibit 50, which the trial court found reflected total fees of $58,942 as of March 27, 2019. Holly's fees undoubtedly increased between March and June, but the trial court correctly noted the absence of any evidentiary basis underlying her August 14, 2019 request for an award of $85,000 predicated on total fees exceeding $105,000.

{¶ 19} The trial court also correctly noted the absence of any "independent testimony or evidence" as to the reasonableness of the visiting judge's $75,000 attorney-fee award. In the divorce decree, the visiting judge adopted Holly's proposed language about her total attorney fees exceeding $105,000. Once again, no record evidence supported this figure. The only evidence presented below was that Holly had total fees of $58,942 as of March 27, 2019. In the divorce decree, the visiting judge adopted Holly's proposed language that this figure did "not include the attorney fees she has incurred during trial or in the process of preparing the proposed decision and decree of divorce." May 3, 2021 Divorce Decree at p. 26. Even if we acknowledge that Holly's fees increased between March 27, 2019 and August 14, 2019 (the date she filed her proposed divorce

decree), she made no attempt to document that increase with a billing statement, affidavit, or anything else. On appeal, Holly suggests that an attorney-fee bill need not be corroborated with "independent testimony." Even if this were true, a particular fee request must be supported by some evidence.

{¶ 20} Holly cites *Dangelo v. Dangelo*, 5th Dist. Stark No. 2023CA00068, 2024-Ohio-425, for the proposition that attorney fees may be awarded absent specific evidence in support where the attorney's time and effort are evident to the trier of fact. *Id.* at ¶ 34. In that case, however, the wife testified about an itemized attorney-fee bill she had received. The only issue was whether an attorney needed to testify as to the value of the services provided. *Id.* at ¶ 34. Here Holly presented no billing records other than Exhibit 50, which the trial court found reflected total fees of $58,942 as of March 27, 2019.

{¶ 21} In any event, even if we assume that Holly in fact had incurred attorney fees exceeding $105,000 at the time of the divorce decree, the trial court reasonably found the visiting judge's $75,000 award to be against the weight of the evidence. In support of the award, the visiting judge stated:

> This Court's docket and Holly's fee detail prove that Defendant has used this case as a fishing expedition to obtain as much information as possible relating to [Holly's alleged new paramour]. And yet, Joe later testified that he was unsure why [the paramour] was relevant to the case. While the proceeding may have been cathartic for Joe, he has burned through city and county resources in pursuit of his focus on [the paramour].
>
> Nothing in this otherwise straightforward case was resolved until the

arrival of Joe's third counsel, who helped with the parties' stipulations. Prior to that time, Joe focused his efforts on subpoenas, numerous motions to modify temporary orders, and failing to provide basic discovery. Holly was subjected to days of prolonged questioning about issues that were either irrelevant or required two or three questions total. Additionally, Holly incurred unnecessary fees due to the time inherently required for Joe to obtain three different attorneys and demand two different judges. For these reasons, and given the disparity of income, the Court FINDS it equitable for Joe to pay Holly an amount equal to $75,000 in attorney fees. * * *

May 3, 2021 Divorce Decree at p. 27.

{¶ 22} Holly contends the trial court ignored this analysis, applied its own view of the evidence, and failed to consider R.C. 3105.73(A), which governs attorney-fee awards in divorce cases. We find these arguments to be without merit.

{¶ 23} With regard to Joseph's focus on Holly's alleged paramour, the record contains some evidence to support an inference that she was having an affair with the paramour during the marriage and during the pendency of the divorce proceeding. Among other things, the record contains evidence that she was arrested for driving under the influence of alcohol while operating the paramour's truck. Holly also admitted that her alleged paramour had spent the night with her at the marital residence. She insisted, however, that he had slept on the couch.

{¶ 24} In a pre-hearing deposition, Joseph had expressed uncertainty regarding the paramour's relevance. However, he explained during the divorce hearing that he

believed the paramour was relevant to the issue of parental rights and responsibilities. May 31, 2019 Transcript Vol. II at p. 154. Joseph expressed concerns about Holly's drinking with the paramour, about Holly's prioritizing her relationship with the paramour over her relationship with her children, and about the paramour's character and the extra-marital relationship's affecting Holly's parenting ability. *Id.* at 232-233; *see also* June 11, 2019 Transcript Vol. III at p. 387. Even if Joseph at times did engage in a "fishing expedition" regarding the alleged paramour, the weight of the evidence does not support a finding that the alleged paramour had no relevance to the case.

{¶ 25} With regard to Joseph's engaging in dilatory conduct by issuing subpoenas, filing numerous motions to modify temporary orders, and failing to provide discovery, we note that a number of his pre-hearing motions were sustained, including some of his motions to modify temporary orders, his own motion to compel discovery, and other motions. Although the record may support a finding that Joseph over-litigated the case to some degree and subjected Holly to some unnecessary examination, the trial court did not abuse its discretion in finding that the weight of the evidence failed to support making him responsible for roughly three-quarters of her claimed attorney fees.

{¶ 26} As for Joseph's changes of counsel, one of his three attorneys withdrew from representation for medical reasons having nothing to do with Joseph. Joseph also cannot be faulted for the fact that two judges were involved in the case. The sitting judge recused herself based on her existing business relationship with the Dye & Doss insurance agency, and the visiting judge was appointed.

{¶ 27} The visiting judge's reliance on the parties' incomes also appears to have

been against the weight of the evidence. The record reflects that Joseph's gross income was $99,072, and Holly's gross income was $32,000. But after adjusting for taxes, credits, child support, and spousal support, their incomes were nearly identical. Joseph's adjusted net income was $52,980, and Holly's was $52,925. *See* July 13, 2021 Journal Entry at Exh. C. In addition, Holly was awarded a lump-sum $114,400 payment from Joseph to equalize the divorce decree's distribution of marital, non-retirement assets.

{¶ 28} The only R.C. 3105.73(A) considerations Holly cites are income disparity and the Joseph's conduct, both of which we have addressed above. In finding that the visiting judge's attorney-fee award of $75,000 was against the weight of the evidence, the trial court necessarily considered the visiting judge's analysis of these issues. The trial court was not required to cite the statute in its new-trial order.

{¶ 29} Holly also contends that R.C. 3105.73(A) authorized an "equitable" fee award and that the statute did not obligate her to link every specific act by Joseph to a specific amount of attorney fees. Even if this is true, the evidence as a whole still must tend to support a particular attorney-fee award. Otherwise, the award is not supported by a sound reasoning process. Here the trial court reviewed the record and concluded that an award in the amount of $75,000 was "not based on *any* evidence presented." Although the trial court acknowledged that an attorney-fee award "may be appropriate," it held that $75,000 was against the weight of the evidence. We cannot say the trial court abused its discretion in making that determination.

{¶ 30} Finally, Holly suggests that ordering a new trial on attorney fees was unwarranted because Joseph already has paid her fees. This argument lacks merit for at

least two reasons. First, Holly cites nothing in the record establishing that Joseph has paid her attorney fees. Second, even if Joseph did pay the fee award, he does not appear to have done so voluntarily. The record reflects that he unsuccessfully sought a stay of enforcement of the divorce decree's provisions in the trial court and this court.

{¶ 31} For each of the foregoing reasons, Holly's first supplemental assignment of error is overruled.

{¶ 32} Holly's second supplemental assignment of error states:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY GRANTING A NEW TRIAL ON THE ISSUE OF PARENTING TIME WITHOUT DISPUTING [THE VISITING JUDGE'S] ANALYSIS, WITHOUT CONDUCTING A BEST-INTEREST ANALYSIS UNDER R.C. 3109.04, AND BY RELYING ON TEMPORARY ORDERS THAT OCCURRED THE YEAR AFTER TRIAL.

{¶ 33} In her second supplemental assignment of error, Holly challenges the trial court's granting of a new trial on parenting time. The issue is whether the trial court abused its discretion in finding the visiting judge's parenting-time order to be against the weight of the evidence.

{¶ 34} Upon review, we see no abuse of discretion. During the pendency of the divorce proceeding, Joseph received parenting time in excess of Champaign County's standard order. In the divorce decree, the visiting judge then granted him parenting time every other week from 2:55 p.m. on Thursday to 5:00 p.m. on Friday. On the alternate weeks, he received parenting time from 2:55 p.m. on Friday to 6:30 p.m. on Sunday. The

divorce decree also granted him two weeks of parenting time during the summer and alternated parenting time between Holly and Joseph on holidays and birthdays. The visiting judge's award of parenting time to Joseph was half of what Champaign County's standard order would have provided in the summer.

{¶ 35} In support of the decision to award Holly legal custody and to grant Joseph "limited visitation" with their children, the visiting judge made findings on the R.C. 3109.04(F)(1) best-interest factors governing the allocation of parental rights and responsibilities. *See* May 3, 2021 Divorce Decree at p. 32-34. Most of those findings were more pertinent to custody than they were to serving as a justification for limiting Joseph's parenting time. The most significant concern expressed by the visiting judge was Joseph's "mental health." This concern was not entirely unfounded insofar as the record reflects a history of Joseph's having anger issues and some alcohol use, engaging in retaliatory conduct directed toward Holly and individuals associated with her, having a relatively minor criminal history related to the divorce case, and generally acting in a petulant and immature manner with regard to Holly. Although Joseph's behavior may have supported a finding that Holly was better suited to serve as legal custodian, the trial court reasonably could have concluded that it did not warrant giving Joseph less parenting time than the standard order would have provided in the summer and that the visiting judge's contrary determination was against the weight of the evidence.

{¶ 36} In reaching this conclusion, we note again that Joseph received parenting time in excess of the standard order during the pendency of the divorce proceeding. Although his behavior toward Holly may have had some impact on the children, his

questionable actions were not directed toward them. In her supplemental appellate brief, Holly recites various acts of inappropriate behavior by Joseph that were directed almost exclusively at her. Notably, the guardian ad litem expressed no concern about Joseph harming the children or doing "inappropriate things" around them. The guardian ad litem also recommended that Joseph receive "additional time" with the children in excess of the standard order. June 11, 2019 Tr. Vol. III at p. 383-384. When asked about Joseph receiving equal 50-50 split parenting time, the guardian ad litem expressed no concerns about him personally. The only reason the guardian ad litem did not recommend equal time was her belief that the children needed a "home base" and "a little more consistency." *Id.* at 392. The guardian ad litem found it "clear" that the children had not been seeing Joseph enough before he began receiving parenting time in excess of the standard order. *Id.* at 418. Although Holly contends the trial court did not address the statutory best-interest factors when granting a new trial, the trial court referenced the recommendation of the guardian ad litem, who did consider those factors.

**{¶ 37}** The guardian ad litem opined that Joseph should receive parenting time in excess of the standard order during the summer. The record reflects that Joseph worked for his father's insurance agency and enjoyed significant flexibility regarding when and where he worked. The guardian ad litem favored Joseph spending at least some workdays with the children during the summer because Holly had a traditional office job and could not be with them anyway. *Id.* at 420-423, 427. The guardian ad litem's parenting-time recommendations were based on all of the statutory best-interest factors as well as "the interactions between the parties, the things that have happened between

the parties, their lack of communication on both—on both ends, the incidents that have occurred," and things said by Joseph and Holly. *Id.* at 460-461.

{¶ 38} For her part, Holly acknowledged Joseph's strong relationship with their children. She also agreed that at least four weeks of parenting time for Joseph in the summer would be in the children's best interest. May 31, 2019 Tr. Vol. II at p. 310. In fact, following the divorce hearing and prior to the visiting judge's issuance of the divorce decree, Holly had agreed to an interim order for the summer of 2020 providing for equal-time "week-to-week" exchanges of the children. If nothing else, this agreement by Holly belied her concerns about Joseph's behavior warranting limited parenting time.

{¶ 39} In contravention of Holly's own recommendation and the guardian ad litem's opinion, the visiting judge's divorce decree awarded Joseph only two weeks of vacation time with the children—just half of what the standard order provided. It also made no provision for any extra time with the children when Holly was at work and the children were home in the summer. Following the divorce hearing and prior to issuance of the divorce decree, however, the visiting judge had granted Joseph extended parenting time in the summer of 2019, allowing him to have the children every other week from Thursday morning until Monday morning. See July 12, 2019 Second Amended Interim Order.

{¶ 40} We recognize that the standard order and the guardian ad litem's recommendation were not binding and that the visiting judge was not necessarily required to follow them. On the record before us here, however, the trial court did not err in finding that the weight of the evidence failed to support awarding Joseph less than standard-order parenting time when he had been receiving parenting time in excess of the standard

order. *Compare Sopczak v. Sopczak*, 2d Dist. Montgomery No. 27517, 2017-Ohio-7519, ¶ 30 ("Given that the parties, since their separation, have operated under a parenting time agreement, and later an order, providing for parenting time in excess of the standard order, and that the final judgment and decree does not set forth any reasoning to support limiting Mr. Sopczak's parenting time to the standard order, we conclude that such limitation does constitute an abuse of discretion."). We see no sound reasoning process supporting the parenting time awarded in the divorce decree. Accordingly, we overrule Holly's second assignment of error in her supplemental brief.

### III. Joseph's Cross-Appeal

{¶ 41} Joseph's cross-appeal presents five assignments of error. The first assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING A 60(A) MOTION FOR ALLEGED CLERICAL ERRORS, WHICH RESULTED IN AN INTERNALLY INCONSISTENT JUDGMENT AND IMPROPERLY INCREASED THE MARITAL ESTATE OF HOLLY DOSS BY $30,000.

{¶ 42} Joseph contends the trial court's post-decree Civ.R. 60(A) ruling was procedurally defective because Holly's motion should have been decided by the visiting judge who presided over the divorce hearing rather than the regular sitting judge. Joseph also contends the Civ.R. 60(A) ruling was substantively defective because it resulted in "internal inconsistencies" and awarded Holly a portion of his separate property.

{¶ 43} Upon review, we find both arguments to be unpersuasive. Under Civ.R. 60(A), a trial court may correct "[c]lerical mistakes in judgments, orders or other parts of

the record and errors therein arising from oversight or omission[.]" "[A] clerical mistake is the type of mistake or omission, mechanical in nature, which is apparent on the record and which does not involve a legal decision or judgment by an attorney." *Newton v. Newton*, 2d Dist. Greene No. 2007-CA-018, 2008-Ohio-1757, ¶ 5. We defer to a trial court's invocation of Civ.R. 60(A) and will reverse only for an abuse of discretion. *Bank of New York Mellon v. Ackerman*, 2d Dist. Montgomery No. 26779, 2016-Ohio-960, ¶ 14.

{¶ 44} Here the trial court relied on Civ.R. 60(A) to make a balance sheet, a child-support computation worksheet, a net-income worksheet, and joint stipulations part of the divorce decree. The visiting judge inadvertently had neglected to incorporate these items into the record, and Joseph does not argue otherwise. Instead, Joseph's argument focuses on the trial court's use of Civ.R. 60(A) to increase the value of a parcel of commercial real estate from $200,000 to $260,000, which resulted in the marital estate increasing by $30,000 because Joseph and his brother co-owned the property equally.

{¶ 45} With regard to the procedural issue, we see no error in the sitting trial court judge correcting the value of the commercial property in the context of Holly's Civ.R. 60(A) motion. The visiting judge withdrew from the case on June 18, 2021, and the sitting trial court judge began presiding over it. At that time, Holly's June 8, 2021 Civ.R. 60(A) motion remained pending. The trial court sustained Holly's motion on July 13, 2021. Because the visiting judge's certificate of assignment had been withdrawn before then, the visiting judge could not have ruled on the motion. Moreover, the error in the value of the real estate was apparent on the record. The sitting trial court judge was capable of recognizing and correcting it.

{¶ 46} In the divorce decree, the visiting judge rejected a $165,000 valuation of the commercial property contained in a report prepared by Joseph's expert. The visiting judge then adopted an appraisal report from Holly's expert, who valued the property at $260,000. *See* May 3, 2021 Decision and Judgment Entry Decree of Divorce at p. 11. After valuing the commercial property at $260,000, the visiting judge inexplicably stated that Joseph's one-half interest in the property was worth $100,000 and that it constituted marital property. This was a clear clerical error because one-half of $260,000 is $130,000. In its Civ.R. 60(A) ruling, the trial court recognized this fact and amended the divorce decree to reflect that Joseph's one-half interest in the real estate was worth $130,000, not $100,000. Contrary to Joseph's argument on appeal, we fail to see how correcting a mathematical error created an "internal inconsistency" in the divorce decree.[1] For the foregoing reasons, Joseph's first assignment of error is overruled.

{¶ 47} Joseph's second assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING CUSTODY OF THE CHILDREN TO HOLLY DOSS.

{¶ 48} Joseph challenges the divorce decree's award of legal custody of the parties' children to Holly. The substance of his two-paragraph argument is that Holly violated court orders by having one of their daughters around her alleged paramour and

---

[1] Although Joseph does allege the existence of an "inconsistency" under his first assignment of error, it has nothing to do with the granting of Civ.R. 60(A) relief regarding the value of the commercial property. The alleged inconsistency concerned the trial court's alleged treatment of Joseph's interest in the property as marital while simultaneously concluding that debt on the property was his separate obligation. We will address this issue under Joseph's third assignment of error, which raises the issue of debt on the property and incorporates his first assignment of error by reference.

by once drinking alcohol around the children.

{¶ 49} In response, Holly asserts that Joseph failed to raise the custody issue in his prior appeal from the divorce decree and that res judicata precludes him from doing so now. This argument lacks merit. In *Doss I*, we dismissed Joseph's appeal from the divorce decree and remanded the case for the trial court to address the merits of his new-trial motion. *Doss I,* 2d Dist. Champaign No. 2021-CA-28, 2022-Ohio-1339, at ¶ 2-4. In so doing, we noted that he would have another opportunity to appeal from the divorce decree following the trial court's new-trial ruling. *Id.* Given that we dismissed Joseph's prior appeal from the divorce decree without resolving the issues he raised, res judicata has no applicability.

{¶ 50} As for the merits of Joseph's custody argument, we are unpersuaded. Even if Holly did violate court orders by having their daughter around her paramour and once consuming alcohol in her children's presence, these acts fell far short of establishing grounds to reverse the custody determination. Indeed, Joseph's cursory argument ignores the visiting judge's specific findings on a number of best-interest factors governing custody determinations. *See* May 3, 2021 Decision and Judgment Entry Decree of Divorce at p. 29-34. These findings, which were based on several days of testimony, included among other things reasonable concerns about Joseph's own mental health as well as his history of criminal conduct, drinking, and anger issues. Given Joseph's failure even to address the visiting judge's thorough analysis of the statutory factors governing custody determinations, he has not shown an abuse of discretion in the award of legal custody to Holly. Accordingly, his second assignment of error is overruled.

{¶ 51} Joseph's third assignment of error states:

THE FAILURE TO CONSIDER THE DEBT OF JOE DOSS IS AGAINST

THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 52} Joseph contends the trial court erred in finding that no debt was owed on the commercial property he co-owned with his brother. He claims undisputed evidence established that he and his brother had borrowed money from their father to purchase and renovate the property, that the debt was evidenced by notes, and that he was obligated to repay his father. Joseph further argues that he had his own separate (i.e., non-marital) interest in the commercial real estate regardless of whether the money obtained from his father was a loan or a gift.

{¶ 53} The record reflects that Joseph's father Andy provided Joseph and his brother Pete with approximately $75,000 to purchase the commercial real estate in 2011 and another $35,000 to make improvements. Although there were promissory notes reflecting these amounts, the visiting judge observed that neither Joseph nor his father could recall when they had been executed and that Joseph's brother had not testified. The visiting judge concluded that the notes did not establish the existence of a valid debt. The visiting judge reached this conclusion based in part on the fact that no payments ever had been made and Joseph's father had not pursued repayment. In the divorce decree, the visiting judge reasoned:

Importantly, in this case, it was undisputed that Joe and Pete had not repaid any of the alleged loans relating to Bodey Circle. It was also undisputed that Andy had not demanded such repayment. In fact, Andy

seemed open to the idea of never demanding repayment from Joe or Pete. Andy testified that he does not plan to work forever, and that Joe and Pete are likely to receive a sizeable inheritance before any alleged debt would ever be repaid. It seems far more likely that, upon Andy's retirement, Pete and Joe will inherit Andy's two shares of Dye & Doss Insurance. Although Joe and Pete may say they plan to pay back their father, this does not, by itself, make it a legal loan—much less one that its "marital" under R.C. 3105.171.

The Court also questions the circumstances surrounding the execution of the promissory notes. The Court FINDS it relevant that the notes were dated at various points between 2011 and 2013, but all become due in July 2018—shortly into the divorce proceedings. When confronted about this timing during his cross-examination, Joe offered no explanation. He also was unable to testify about the purpose for some of the alleged loans. For example, when asked about the purpose for the promissory note for $10,000, Joe stated that he could not recall exactly why the money was needed. Also, Andy was unable to testify with any specificity as to when the notes were presented to him. Finally, Joe offered no explanation why he should be credited with a 100 percent interest in the alleged debt, despite having only a 50 percent interest in Bodey Circle itself.

May 3, 2021 Divorce Decree at p. 13-14.

{¶ 54} Ultimately, the visiting judge determined that there was "no loan or liability

encumbering" the commercial real estate. *Id.* at p. 14. Alternatively, assuming arguendo that the promissory notes did reflect the existence of a valid debt, the trial court then found that it would be Joseph's separate (i.e., non-marital) liability.

**{¶ 55}** Upon review, we see no abuse of discretion in the visiting judge's finding that the Bodey Circle commercial real estate was not encumbered with a valid repayment obligation to Joseph's father. In addition to questioning the genuineness of the debt evidenced by promissory notes, the visiting judge found that Joseph and his brother never had repaid any money and likely never would be required to do so. Under these circumstances, the visiting judge had discretion, as the trier of fact, to find that no valid repayment obligation existed for purposes of valuing the parties' assets and liabilities. *Compare Phillips v. Phillips*, 5th Dist. Morrow No. 12CA0020, 2013-Ohio-3538, ¶ 25 (affirming a finding of no valid debt where husband testified about promissory notes evidencing loans from his parents but parents never pursued repayment).

**{¶ 56}** Joseph contends the trial court erred in finding that the money obtained from his father was his own separate debt obligation while simultaneously finding his one-half interest in the commercial real estate to be marital property. Joseph reasons that if the debt was his separate liability, then he must have had a corresponding separate (i.e., non-marital) interest in property.[2] This argument fails because the trial court explicitly determined "that there is no loan or liability encumbering Bodey Circle." May 3, 2021 Divorce Decree at p. 14. The trial court's statement about any debt on the property being Joseph's separate obligation merely assumed for sake of argument that such a debt

---

[2] This is the argument in Joseph's first assignment of error that he has incorporated by reference into his third assignment of error.

existed. *Id.*

**{¶ 57}** Finally, Joseph reasons that if the money obtained from his father was a gift, then he still had a separate, non-marital interest in the real estate insofar as he used the money to purchase the property or make improvements. This argument is equally unpersuasive. The parties were married when Joseph and his brother purchased the property in 2011 and then made improvements with money from their father. "For a gift received by a spouse during marriage to constitute separate property, it must have been given with the intent to provide a benefit to only one of the spouses." *Lindsey v. Lindsey*, 10th Dist. Franklin No. 15AP-733, 2016-Ohio-4642, ¶ 15. Under R.C. 3105.171(A)(6)(a)(vii), a gift to either spouse during the marriage is marital property unless clear and convincing evidence establishes that the donor intended it to belong exclusively to the recipient spouse.

**{¶ 58}** In the proceedings below, Joseph insisted that the money received from his father was a repayable loan and not a gift at all. He made no attempt to establish that the circumstances surrounding his receipt of the money evidenced his father's intent to make a gift benefitting only him. As a result, the record contains no evidence supporting Joseph's argument that he had a separate, non-marital interest in the commercial property. The third assignment of error is overruled.

**{¶ 59}** Joseph's fourth assignment of error states:

THE TRIAL COURT'S SUBSTANTIAL REDUCTION OF THE PARENTING
TIME FOR MR. DOSS WAS ERROR AND AGAINST THE WEIGHT OF
THE EVIDENCE.

{¶ 60} Joseph challenges the visiting judge's reduction in parenting time in the divorce decree. In light of our conclusion that the trial court properly ordered a new trial on parenting time, this assignment of error is overruled as moot.

{¶ 61} Joseph's fifth assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING $75,000 IN ATTORNEY'S FEES FOR ALLEGED MISCONDUCT BY DEFENDANT WHICH WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 62} Joseph contends the visiting judge erred in ordering him to pay $75,000 of Holly's attorney fees. Once again, this assignment of error is overruled as moot given our determination above that Joseph was entitled to a new trial on the issue.

## IV. Conclusion

{¶ 63} Having overruled each party's assignments of error, we affirm the trial court's judgment entry sustaining in part Joseph's new-trial motion. We also affirm the judgment entry and decree of divorce subject to the ordered new trial on attorney-fee and parenting-time issues.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.